UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| AARON MCCLENON, et al., | ) |
|  | ) |
|  | ) Civil Action No. 19-cv-06415 |
| *Petitioners*, | ) |
| v. | ) Honorable Mary M. Rowland |
|  | ) |
| POSTMATES INC., | ) |
|  | ) |
| *Respondent*. | ) |
|  | ) |

**MEMORANDUM IN SUPPORT OF PETITIONERS'
MOTION TO COMPEL ARBITRATION**


**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. BACKGROUND ............................................................................................................. 2

    A. Postmates Requires Couriers To Sign a Fleet Agreement That Contains a Broad Arbitration Clause. ................................................................................................... 2

    B. Petitioners Filed Valid Demands for Individual Arbitration ............................... 4

    C. Postmates Refused to Pay the Filing Fees It Owed, and Instead Resorted to Meritless Stall Tactics. ........................................................................................................... 5

III. ARGUMENT ................................................................................................................... 7

    A. The Parties Entered Into a Valid Arbitration Agreement That Covers the Present Dispute. .................................................................................................................. 7

        1. The Parties Entered Into a Valid Arbitration Agreement. ............................ 8

        2. The Arbitration Agreement Covers the Present Dispute. ............................ 8

    B. The Court Should Enforce the Arbitration Provisions and Require Postmates To Timely Pay the Arbitration Fees it Owes. ........................................................................ 9

IV. CONCLUSION .............................................................................................................. 12

# **TABLE OF AUTHORITIES**

**CASES**         **PAGE(s)**

*Brown v. Dillard's, Inc.*,
    430 F.3d 1004 (9th Cir. 2005) .................................................................................... 10

*Cequent Performance Prods., Inc. v. Let's Go Aero, Inc.*,
    No. 14-C-8457, 2016 WL 4036754 (N.D. Ill. July 28, 2016) ........................................ 7

*Garcia v. Mason Contract Prods., LLC*,
    No. 08-23103-CIV, 2010 WL 3259922 (S.D. Fla. Aug. 18, 2010) ............................. 10

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    139 S. Ct. 524 (2019) ................................................................................................ 7, 8

*Howsam v. Dean Witter Reynolds, Inc.*,
    537 U.S. 79 (2002) ......................................................................................................... 7

*Int'l Ass'n of Machinists & Aerospace Workers, Dist. Lodge No. 10*
    *v. Crown Cork & Seal Co.*,
    No. 11-C-0760, 2012 WL 1037652 (E.D. Wisc. Mar. 27, 2012) ................................ 12

*Lee v. Postmates Inc.*,
    No. 3:18-cv-03421-JCS, 2018 WL 4961802 (N.D. Cal. Oct. 15, 2018) ....................... 8

*McLellan v. Fitbit, Inc.*,
    No. 3:16-cv-00036-JD, 2018 WL 3549042 (N.D. Cal. July 24, 2018) .................... 9, 10

*Pre-Paid Legal Servs., Inc. v. Cahill*,
    786 F.3d 1287 (10th Cir. 2015) .................................................................................. 10

*Scheurer v. Fromm Family Foods LLC*,
    863 F.3d 748 (7th Cir. 2017) ........................................................................................ 8

*Smith v. GC Servs. Ltd. P'ship*,
    907 F.3d 495 (7th Cir. 2018) ...................................................................................... 10

*Thomas D. Philipsborn Irrevocable Ins. Tr. v. Avon Capital, LLC*,
    No. 11-C-3274, 2012 WL 4513903 (N.D. Ill. Oct. 1, 2012) ....................................... 10

*United Here Local 1 v. The Standard Club*,
    No. 07-CV-2530, 2007 WL 2962788 (N.D. Ill. Oct. 5, 2007) ...................................... 7

**STATUTE**

9 U.S.C. § 4 ........................................................................................................................ 8

**OTHER AUTHORITIES**     **PAGE(s)**

Postmates's Mot. to Compel Arbitration, *Lee v. Postmates Inc.*,
    No. 3:18-cv-03421-JCS, Dkt. No. 14 (N.D. Cal. July 20, 2018) ........................................4

Postmates's Mot. to Compel Arbitration, *Lee v. Postmates Inc.*,
    No. 3:18-cv-03421-JCS, Dkt. No. 36 (N.D. Cal. Nov. 5, 2018) ........................................4

Postmates's Mot. to Compel Arbitration, *Winns v. Postmates Inc.*,
    No. CGC-17-562282 (Cal. Sup. Ct. Jan. 23, 2018) .......................................................3, 4

Postmates's Petition for Order Compelling Arbitration, *Rimler v. Postmates Inc.*,
    No. CGC-18-567868 (Cal. Sup. Ct. Aug. 17, 2018) ..........................................................4

## I. INTRODUCTION

Petitioners are 200 couriers who worked for Postmates Inc. in Illinois. Couriers, including Petitioners, are Postmates's core workforce. Despite Petitioners' importance to Postmates, Postmates did not treat Petitioners as employees. Instead Postmates misclassified them as independent contractors—unlawfully depriving them of a minimum wage, overtime pay, and other requirements of federal, state, and local law.

For years Postmates has required its couriers to sign a Fleet Agreement that contains a sweeping arbitration clause. The arbitration clause prohibits couriers from bringing class-action claims against Postmates in court or arbitration. Instead, any courier who wishes to bring a legal claim against Postmates must do so individually.

Pursuant to the Fleet Agreement, each Petitioner filed an individual demand for arbitration against Postmates to recover backpay and related penalties. The American Arbitration Association ("AAA") determined that each Petitioner had met the requirements to initiate individual arbitration against Postmates. But Postmates refused to pay the filing fees necessary to commence arbitration with even a single Petitioner, in direct contravention of the Fleet Agreement. This motion simply asks the Court to require Postmates to honor the contract it drafted.

Petitioners' right to relief flows from two premises:

First, the arbitration agreements Petitioners signed unambiguously require arbitration here. Postmates's Fleet Agreement requires arbitration of "any and all claims" between couriers and Postmates, "including but not limited to those arising out of or relating to [the Fleet] Agreement" and each courier's "classification as an independent contractor." Fleet Agreement § 11A.i (effective May 11, 2018), Keller Decl., Ex. E. There can be no dispute that Petitioners' misclassification claims fall within the scope of the arbitration clause. And even if there were a

dispute regarding the applicability of the arbitration clause, the Fleet Agreement reserves that question for the arbitrator as well: "Only an arbitrator, and not any federal, state, or local court or agency, shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Mutual Arbitration Provision." *Id.* § 11A.ii.

<u>Second</u>, Postmates breached its contractual obligation to commence arbitration. The Fleet Agreement provides that AAA shall administer any arbitrations and requires that Postmates pay all AAA filing fees. *Id.* § 11B.vi. AAA imposed a deadline of June 13, 2019 for Postmates to pay the filing fees necessary to commence Petitioners' arbitrations, but Postmates refused to pay. Instead, Postmates asserted meritless objections to Petitioners' method of service and fee obligations, invoked inapplicable AAA rules to seek an eleventh-hour stay of arbitration, and called into question AAA's fairness and neutrality. AAA correctly rejected those stall tactics, yet Postmates still refused to arbitrate Petitioners' claims, resulting in AAA closing Petitioners' cases. Until Postmates pays the fees it owes, none of Petitioners' arbitrations can begin.

The Court should grant this motion and require Postmates to abide by its agreement by (1) paying all arbitration filing fees and arbitration retainers necessary to proceed with Petitioners' demands for arbitration within 14 days of the fees being invoiced by AAA, and (2) paying any subsequent AAA invoices related to Petitioners' arbitrations within 14 days of receiving those invoices.

## II. BACKGROUND

**A.     Postmates Requires Couriers To Sign a Fleet Agreement That Contains a Broad Arbitration Clause.**

Postmates is an on-demand delivery service through which customers may order food and other items from participating merchants. Postmates pays couriers to deliver customers' orders. Effectively all of Postmates's revenue comes from deliveries.

2

Since at least 2015 Postmates has required its couriers to sign a Fleet Agreement containing an arbitration clause. *See* Postmates's Mot. to Compel Arbitration at 12–13, *Winns v. Postmates Inc.*, No. CGC-17-562282 (Cal. Sup. Ct. Jan. 23, 2018), Keller Decl., Ex. R (discussing the arbitration provision in Postmates's 2015 Fleet Agreement). As relevant here, Postmates updated its Fleet Agreement, effective May 11, 2018, and required every courier to sign the agreement to continue working as a courier. *See* Fleet Agreement.[1]

The Fleet Agreement provides that Postmates and the courier "mutually agree to resolve any disputes between them exclusively through final and binding arbitration instead of filing a lawsuit in court." *Id.* § 11A. This arbitration requirement applies to "any and all claims between the Parties, including but not limited to those arising out of or relating to this Agreement, the Contractor's classification as an independent contractor, . . . and all other aspects of the Contractor's relationship with Postmates, past or present, whether arising under federal, state, or local law." *Id.* § 11A.i. To the extent the parties dispute the enforceability or scope of the arbitration requirement, the agreement provides that those disputes themselves must be decided by an arbitrator: "Only an arbitrator, and not any federal, state, or local court or agency, shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Mutual Arbitration Provision." *Id.* § 11A.ii.

The arbitration required under the agreement must be individual; the agreement provides that "any and all disputes or claims between the parties will be resolved in individual arbitration,"

---

[1] Postmates allowed couriers to opt out of the arbitration provision by submitting an opt-out notice to Postmates within 30 days of signing the agreement; all couriers were required to first sign the full agreement and then opt out. *See* Fleet Agreement § 11B.ix. Thus, only a courier who carefully reviewed Postmates's boilerplate contract, accepted it, and then submitted a notice could avoid the arbitration requirement.

3

and that the parties "waive their right to have any dispute or claim brought, heard or arbitrated as a class and/or collective action" or "representative action". *Id.* §§ 11B.ii, iii. The agreement also provides that arbitration will be administered by AAA under its Commercial Arbitration Rules. *Id.* §§ 11B.iv, vi. And it states that "Postmates shall pay the arbitrator's and arbitration fees and costs, unless applicable law requires otherwise." *Id.* § 11B.vi.

Postmates has repeatedly used arbitration to avoid addressing its couriers' misclassification claims in court, arguing that its drivers "knowingly entered into an enforceable agreement" under which a courier's challenge to "her classification as an independent contractor is expressly covered." Postmates's Mot. to Compel Arbitration at 8, *Lee v. Postmates Inc.*, No. 3:18-cv-03421-JCS, Dkt. No. 14 at 10 (N.D. Cal. July 20, 2018); *see also* Postmates's Mot. to Compel Arbitration, *Lee*, Dkt. No. 36 (N.D. Cal. Nov. 5, 2018); Postmates's Petition for Order Compelling Arbitration, *Rimler v. Postmates Inc.*, No. CGC-18-567868 (Cal. Sup. Ct. Aug. 17, 2018), Keller Decl., Ex. Q; Postmates's Mot. to Compel Arbitration, *Winns*. In doing so, Postmates has explained that a courier must "resolve any dispute with Postmates—including her classification as an independent contractor—through final and binding arbitration." *Lee*, Dkt. No. 14 at 4.

**B.     Petitioners Filed Valid Demands for Individual Arbitration.**

On March 6, 2019, Petitioners' counsel informed Postmates that it represented Petitioners and other couriers who intended to initiate individual arbitrations against Postmates. *See* Keller Decl. ¶ 4. Although they had no obligation to do so under their contract with Postmates, Petitioners informed Postmates that they would be open to an alternative process to resolve their claims, such as mediation, to avoid the transaction costs of individual arbitration. *Id.* But Petitioners were willing to delay arbitration in favor of such an alternative process only if mediation proceeded promptly. *Id.* In exchange for Petitioners' agreement to delay filing their demands for arbitration, Postmates entered into an agreement stipulating that Petitioners were subject to arbitration

4

agreements with Postmates and agreeing to toll Petitioners' claims pending discussions regarding a potential mediation. *See id.*, Ex B.

For the next two months, Petitioners continued to offer to negotiate an alternative to arbitration. *Id.* ¶ 6. Ultimately, however, the parties were not able to schedule mediation. *Id.* On April 22, 2019, 4,925 couriers from California served individual arbitration demands on Postmates and AAA. *Id.* ¶ 11.[2] On May 13, 2019, Petitioners served their arbitration demands on Postmates and AAA. *Id.* AAA determined that each Petitioner and each California courier claimant had met his or her arbitration filing requirements. *Id.* ¶ 13.

### C. Postmates Refused to Pay the Filing Fees It Owed, and Instead Resorted to Meritless Stall Tactics.

Once AAA determined that each Petitioner's demand complied with AAA's rules, Postmates was obligated to pay the filing fees necessary to commence arbitration. *See* Fleet Agreement § 11B.vi. On May 16, 2019, AAA imposed a deadline of June 6, 2019 for Postmates to pay the filing fees necessary to commence Petitioners' arbitrations. *See* Keller Decl. ¶ 17.

Postmates's strategy became clear when it refused to pay the filing fees it owed for the California courier claimants.[3] Instead of paying by May 31, 2019 as required, Postmates sent an *ex parte* letter to AAA. *See* Keller Decl., Ex. G. The letter did not dispute that Postmates is a party to valid arbitration agreements that cover each Petitioner's claims. *Id.* Nor did it dispute that AAA had already determined that each Petitioner's demand had "met AAA's filing requirements." *Id.* at 1. Rather, Postmates raised three meritless objections regarding the manner

---

[2] The California couriers have filed a motion to compel arbitration in the U.S. District Court for the Northern District of California. *See Adams v. Postmates Inc.*, No. 4:19-cv-03042-SBA (N.D. Cal.). Postmates's response to those couriers' demands provides relevant context here.

[3] AAA forwarded the letter to Petitioners to give them an opportunity to respond, which Petitioners did on June 3, 2019. *See* Keller Decl., Ex. H.

5

of service and format of Petitioners' demands, which it had never previously raised with AAA or Petitioners. *See* Keller Decl. ¶ 18.

During a phone conference on June 6, 2019, AAA rejected Postmates's objections, confirmed that Petitioners' demands had been properly filed, and reaffirmed that Postmates owed the filing fees necessary to commence Petitioners' arbitrations. *See* Keller Decl. ¶ 20. In making that determination, AAA recognized what the Fleet Agreement makes clear: such objections are properly lodged with individual arbitrators, not AAA or this Court. AAA then imposed a final deadline of June 13, 2019 for Postmates to pay the filing fees it owes under the Fleet Agreement. *See* Keller Decl., Ex. I.

Three days before the deadline Postmates sent another letter to AAA reasserting its prior objections and arguing that it was entitled to a stay of arbitration under AAA's rules. *See* Keller Decl., Ex. J. Postmates also went so far as to question AAA's fairness and neutrality, after having chosen AAA to administer its arbitrations. *Id.* at 2. Petitioners responded the next day. *See* Keller Decl., Ex. K. Petitioners explained that their demands had all been properly filed. *Id.* at 2. But to moot Postmates's meritless process objections, each Petitioner re-served Postmates with an individual demand for arbitration in the manner Postmates contended was required. *Id.* at 3–4; *see also, e.g.*, Keller Decl., Ex. L.

Postmates refused to pay the required filing fees by AAA's final deadline, despite AAA rejecting Postmates's objections and Petitioners mooting those objections. *See* Keller Decl. ¶ 25. On June 21, 2019, AAA sent an email to Postmates's and Petitioners' counsel (1) confirming that each Petitioner's demand complied in all respects with AAA's requirements, and (2) stating that AAA "is closing [Petitioners'] cases" due to Postmates's lack of payment. *See* Keller Decl., Ex.

6

P. AAA further stated that "[t]he AAA will abide by any court order directing the manner in which the underlying arbitrations should or should not proceed." *Id.*

## III.  ARGUMENT

Petitioners and Postmates entered into valid agreements to arbitrate, and Petitioners have met their requirements to proceed with individual arbitrations.  But even though Postmates previously enforced its arbitration agreement to avoid facing claims in court, it now refuses to pay the filing fees required by its contract and AAA rules.  That is not a choice Postmates's contract allows it to make.  This Court should order Postmates to comply with the contract it drafted.

**A.     The Parties Entered Into a Valid Arbitration Agreement That Covers the Present Dispute.**

Under the Federal Arbitration Act, a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.  In deciding whether to compel arbitration courts generally analyze two "gateway" issues: (1) whether the parties have entered into a valid arbitration agreement, and (2) whether the agreement covers the dispute.  *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–84 (2002).[4]  Where, as here, the parties have agreed to a "delegation clause" that delegates questions regarding the enforceability or scope of an arbitration clause to an arbitrator, the court need only determine that the parties have entered into a valid arbitration agreement.  *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019).  An arbitrator must resolve all questions covered by the delegation clause.

---

[4] Petitioners may institute a court action by filing a petition to compel arbitration, as they have done here.  *See, e.g.*, *Cequent Performance Prods., Inc. v. Let's Go Aero, Inc.*, No. 14-C-8457, 2016 WL 4036754, at *2 (N.D. Ill. July 28, 2016); *United Here Local 1 v. The Standard Club*, No. 07-CV-2530, 2007 WL 2962788, at *1 (N.D. Ill. Oct. 5, 2007).

7

Where parties have formed a valid agreement to arbitrate and one party refuses to engage with the process, "arbitration should be compelled." *Scheurer v. Fromm Family Foods LLC*, 863 F.3d 748, 752 (7th Cir. 2017). Postmates and Petitioners have entered into a valid arbitration agreement that covers the present dispute. The Court must compel Postmates to arbitrate Petitioners' claims.

### 1. The Parties Entered Into a Valid Arbitration Agreement.

There is no question that the parties entered into a valid arbitration agreement. *See* Keller Decl., ¶ 8, Ex. B. The Fleet Agreement each Petitioner signed contains a sweeping arbitration provision under which Postmates has successfully compelled arbitration. *See Lee v. Postmates Inc.*, No. 18-cv-03421-JCS, 2018 WL 4961802, at *10 (N.D. Cal. Oct. 15, 2018). Postmates has conceded this point. In its June 10, 2019 letter to AAA, it acknowledged that "Postmates and any claimants who have conducted work on the Postmates platform and did not elect to opt out of arbitration agreed to arbitrate their claims individually." *See* Keller Decl., Ex. J at 1.

### 2. The Arbitration Agreement Covers the Present Dispute.

That the parties have entered into a valid arbitration agreement is sufficient by itself to compel arbitration, because Postmates's Fleet Agreement delegates to the arbitrator any question regarding the scope of the arbitration agreement: "Only an arbitrator, and not any federal, state, or local court or agency, shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Mutual Arbitration Provision." Fleet Agreement § 11A. When an agreement contains a broad delegation clause like the clause in the Fleet Agreement, it is well established that, "[j]ust as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator." *Schein*, 139 S. Ct. at 530.

8

Regardless, there also can be no question that the arbitration agreement covers the present dispute. The Fleet Agreement states that "any and all claims between the [p]arties, including but not limited to those arising out of or relating to [the agreement]," are subject to binding arbitration. Fleet Agreement § 11A.i. Petitioners demand arbitration because Postmates misclassified them as independent contractors. And the Fleet Agreement explicitly identifies a dispute over a courier's "classification as an independent contractor" as one that must be arbitrated. *See id.*

**B.      The Court Should Enforce the Arbitration Provisions and Require Postmates To Timely Pay the Arbitration Fees it Owes.**

AAA set a deadline of June 6, 2019 for Postmates to pay the filing fees necessary for Petitioners to arbitrate their claims. *See* Keller Decl. ¶ 17. When Postmates refused to comply with that deadline, AAA granted Postmates the courtesy of setting a second deadline of June 13, 2019. *See* Keller Decl., Ex. I. Postmates again refused to comply—in direct violation of its own arbitration agreement. *Id.* ¶ 25; Fleet Agreement § 11A.i. Due to Postmates's non-payment, AAA closed Petitioners' cases, *see* Keller Decl., Ex. P, thereby leaving Petitioners unable to proceed with the arbitration in which Postmates agreed to engage.

Postmates breached its arbitration agreement. There is no shortage of case law holding that in similar situations, when defendants suddenly become reluctant to proceed with arbitration under agreements they drafted and imposed, those defendants may be compelled to arbitrate or risk waiving their right to arbitrate. One example is particularly telling: In *McLellan v. Fitbit, Inc.*, the court granted the defendant's motion to compel the plaintiff's misrepresentation claims to arbitration under the defendant's Terms of Service. No. 3:16-cv-00036-JD, 2018 WL 3549042, at *1–2 (N.D. Cal. July 24, 2018). When the plaintiff then demanded arbitration, the defendant "turned to 'the dark side'" and refused to pay the filing fees it owed under the same Terms of Service upon which it had relied to compel arbitration. *Id.* at *2–4. Considering that conduct the

9

court held that the defendant avoided breaching its obligation to arbitration only because it paid the filing fees after the court expressed concern. *Id.* at *4–6. The defendant's counsel, however, was not so lucky; the court-imposed sanctions on counsel for "delay[ing] and imped[ing] the arbitration on frivolous grounds." *Id.* at *6.

This Court and other courts have similarly found that a defendant breaches its arbitration agreement when it refuses to pay the arbitration filing fees required by that agreement. *See, e.g.*, *Thomas D. Philipsborn Irrevocable Ins. Tr. v. Avon Capital, LLC*, No. 11-C-3274, 2012 WL 4513903, at *5 (N.D. Ill. Oct. 1, 2012) (denying the defendants' motion to compel arbitration and proceeding with litigation when the defendants failed to pay AAA's required arbitration fees); *see also Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287, 1294 (10th Cir. 2015) (lifting stay following termination of arbitration based on a party's refusal to pay fees); *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1009–10 (9th Cir. 2005) (finding that a defendant that "breached its [arbitration] agreement . . . by refusing to participate in the arbitration proceedings . . . cannot now enforce it"); *Garcia v. Mason Contract Prods., LLC*, No. 08-23103-CIV, 2010 WL 3259922, at *1–2 (S.D. Fla. Aug. 18, 2010) (granting a motion to reopen the case after the "[d]efendant persistently refused to timely pay its share of the arbitrator's fee"); *cf. Smith v. GC Servs. Ltd. P'ship*, 907 F.3d 495, 500 (7th Cir. 2018) (holding that the defendant waived its ability to compel arbitration when its conduct was "manifestly inconsistent with an intention to arbitrate").

As those cases hold, Postmates breached its contract with Petitioners when it failed to pay the required filing fees invoiced by AAA. Under the Federal Arbitration Act, that breach warrants an order from this Court "directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. And the Fleet Agreement requires that Postmates pay the filing fees it owes so that arbitration can proceed. *See* Fleet Agreement § 11B.ii.

10

Although Postmates's breach of its fee obligations is itself sufficient to support Petitioners' requested relief, Postmates's stall tactics further underscore its refusal to honor the arbitration process it designed. Postmates executed a tolling agreement stipulating that undersigned counsel's Postmates clients, including Petitioners, were subject to arbitration. *See* Keller Decl., Ex B. Similarly, in its May 31, 2019 letter to AAA, Postmates implicitly conceded that Petitioners' claims are governed by a valid arbitration agreement, and it expressly recognized that AAA has determined that Petitioners properly met the filing requirements under AAA Rules. *See* Keller Decl., Ex. G at 1. Postmates argued to AAA only that Petitioners failed to comply with <u>additional</u> requirements supposedly imposed by Postmates's Fleet Agreement. *Id.* AAA rejected that argument, and with it, Postmates's last-ditch effort to avoid its obligation to pay Petitioners' fees. *See* Keller Decl. ¶ 20, Ex. I.

AAA recognized that Postmates's objection arises from an interpretation of its Fleet Agreement. *See* Keller Decl. ¶ 20. And the Fleet Agreement contains a delegation clause stating that "[o]<u>nly an arbitrator</u>, and not any federal, state, or local court or agency, shall have the <u>exclusive</u> authority to resolve any dispute relating to the interpretation, <u>applicability</u>, enforceability, or formation of this Mutual Arbitration Provision." Fleet Agreement § 11A.ii (emphases added); *see also* Keller Decl. ¶ 13. Based on that delegation clause, AAA's representative reaffirmed a position that Postmates itself has asserted in federal court: any disputes arising from the parties' interpretations of Postmates's contract may be raised only with individual arbitrators. *Id.*; *see also* Postmates's Mot. to Compel Arbitration at 7, *Lee,* Dkt. No. 14 ("The [Fleet Agreement's] Mutual Arbitration Provision indisputably delegates gateway arbitrability questions to the arbitrator."). Because AAA has determined that Petitioners' filings comply with AAA's rules, any remaining dispute regarding the Fleet Agreement's enforceability must be determined by individual

11

arbitration. That cannot happen until Postmates pays its share of the filing fees so arbitration can commence.

"[A]n employer's unjustified refusal to arbitrate a grievance frustrates the purpose of arbitration." *Int'l Ass'n of Machinists & Aerospace Workers, Dist. Lodge No. 10 v. Crown Cork & Seal Co.*, No. 11-C-0760, 2012 WL 1037652, at *4 (E.D. Wisc. Mar. 27, 2012) (awarding a union its attorneys' fees for a motion to compel because the employer did "not have a rational legal basis for its refusal to submit the [parties'] grievance" to arbitration). This Court should not allow Postmates to frustrate arbitration's purpose here. It should find that Postmates has breached its agreement to arbitrate and order Postmates to remedy that breach by paying all fees necessary to commence arbitration on Petitioners' pending demands.

## IV. CONCLUSION

For the foregoing reasons, Petitioners' motion to compel arbitration should be granted. This Court should require Postmates to (1) pay all arbitration filing fees and arbitration retainers necessary to proceed with Petitioners' demands for arbitration within 14 days of the fees being invoiced by AAA, and (2) pay any subsequent AAA invoices related to Petitioners' arbitrations within 14 days of receiving those invoices.

Dated: September 27, 2019
Respectfully submitted,

/s/ Ashley Keller
Ashley Keller (#6300171)
  ack@kellerlenkner.com
Travis Lenkner (#6311545)
  tdl@kellerlenkner.com
Tom Kayes (#6315461)
  mpr@kellerlenkner.com
KELLER LENKNER LLC
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
(312) 741-5220
*Attorneys for Petitioners*

12

**CERTIFICATE OF SERVICE**

I certify that I shall cause the foregoing document to be delivered on or around September 27, 2019 by courier to Postmates Inc.'s registered agent for service of process: CT Corporation, 208 South LaSalle Street, Suite 814, Chicago, Illinois 60604.

Dated: September 27, 2019    /s/ Ashley Keller