UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AARON MCCLENON, et al., | ) |
| *Petitioners*, | ) Civil Action No. 19-cv-06415 |
| v. | ) Honorable Mary M. Rowland |
| POSTMATES INC., | ) |
| *Respondent*. | ) |

## DECLARATION OF ASHLEY KELLER

I, Ashley Keller, declare based on personal knowledge as follows:

1. I am a Partner at Keller Lenkner LLC, counsel for Petitioners in this matter.

2. I have personal knowledge of the facts stated herein, and if called upon as a witness, I could and would testify competently thereto.

3. This declaration is submitted in support of Petitioners' Motion to Compel Arbitration.

4. On March 6, 2019, Keller Lenkner informed Postmates that it represented more than 3,000 couriers in California and Illinois who intended to initiate individual arbitrations against Postmates. That communication included a list of the couriers and their identifying information. Keller Lenkner also offered to discuss resolving those couriers' claims in an alternative manner, such as through mediation, so long as the process occurred promptly and did not introduce delay. Attached as Exhibit A is a true and correct copy of Keller Lenkner's letter to Postmates, dated March 6, 2019.

5. On March 22, 2019, Postmates's outside counsel, Dhananjay Manthripragada of Gibson, Dunn & Crutcher LLP, contacted me to state that his firm had been retained to represent

Postmates as outside counsel in these matters. He also requested that Keller Lenkner direct all communications to Postmates's outside counsel going forward.

6. Over the following two months, Keller Lenkner continued to offer to negotiate an alternative to arbitration, such as mediation.

7. On April 3, 2019, I emailed Mr. Manthripragada to propose mediators and a schedule under which Postmates and our clients would exchange data and mediation briefs, with a mediation to occur in California on May 1, 2019.

8. Also on April 3, 2019, Mr. Manthripragada executed a tolling agreement on behalf of Postmates, dated as of April 2, 2019. That tolling agreement covered the claims of all Keller Lenkner clients who retained the firm to bring claims against Postmates, including Petitioners. Attached as Exhibit B is a true and correct copy of that agreement.

9. On April 9, 2019, Mr. Manthripragada responded to my March 28 and April 3 emails. He declined to accept my proposed mediation schedule.

10. Although the parties have discussed possible alternatives to individual arbitrations, Keller Lenkner has never proposed a settlement figure.

11. On April 22, 2019, Keller Lenkner submitted 4,925 demands for individual arbitration on behalf of Postmates couriers who worked for Postmates in California. Attached as Exhibit C is a true and correct copy of the cover letter accompanying Petitioners' April 22, 2019 demands.

12. On May 10, 2019, given Postmates's reluctance to schedule formal mediation dates, I requested that AAA proceed with Petitioners' individual arbitrations in parallel to mediation.

13. On May 13, 2019, Keller Lenkner submitted 419 arbitration demands to AAA on behalf of Postmates couriers, including Petitioners, who worked for Postmates in Illinois. Each

Petitioner has represented to Keller Lenkner that he or she has worked as a Postmates courier. Postmates has represented to numerous courts that before any courier can work for Postmates, he or she must agree to the Postmates Fleet Agreement. Attached as Exhibit D is a declaration recently filed by Postmates in another case attesting to this fact. *See* Decl. of Ashley Campbell ¶ 7, *Costa v. Postmates Inc.*, No. 3:19-cv-03046-JST (N.D. Cal. June 13, 2019), Dkt. No. 23-1.

14. Each Petitioner stated to Keller Lenkner that they stopped working for Postmates on or before early 2019. Thus, although Postmates began requiring couriers to sign a revised arbitration agreement beginning April 3, 2019, Petitioners were subject to and pursued arbitration under Postmates's 2018 Fleet Agreement, which requires that Postmates pay all arbitration filing fees. Attached as Exhibit E is a true and correct copy of Postmates's 2018 Fleet Agreement, effective May 11, 2018.

15. Over the course of several days in mid-May, the parties conducted a mediation by phone with Mr. Al Feliu, but were unable to resolve their dispute or agree on an alternative process to individual arbitration.

16. Throughout discussions with Postmates and Postmates's counsel, Keller Lenkner made clear that each Petitioner sought individual arbitration. *See, e.g.*, Ex. A at 1 ("[W]e are prepared to serve individual demands for arbitration for each client with the American Arbitration Association ('AAA').").

17. On May 16, 2019, AAA sent an email to Postmates's counsel setting June 6, 2019, as the deadline for Postmates to pay the filing fees necessary to commence Petitioners' arbitrations. Attached as Exhibit F is a true and correct copy of that email.

18. On May 31, 2019, Postmates sent an *ex parte* letter to AAA lodging three objections to the form and substance of Petitioners' arbitration demands and to AAA's determination of the

fees owed by each party. AAA forwarded the letter to me to give Keller Lenkner an opportunity to respond. Attached as Exhibit G is a true and correct copy of Postmates's May 31, 2019 letter.

19. On June 3, 2019, Keller Lenkner sent a letter to AAA responding to Postmates's May 31 letter. Attached as Exhibit H is a true and correct copy of Keller Lenkner's June 3, 2019 letter.

20. On June 6, 2019, AAA's representative, Keller Lenkner, and Postmates's counsel participated in a conference call to discuss Postmates's May 31 objections and its filing-fee deadlines. AAA's representative, Ms. Heather Santo, stated that each Petitioner's arbitration demand complied in all respects with AAA's rules. She further stated that, pursuant to the Fleet Agreement, any dispute about whether Petitioners' demands comply with the terms of the Fleet Agreement must be raised with individual arbitrators.

21. On June 7, 2019, AAA sent a letter summarizing the parties' June 6 discussion and setting June 13, 2019 as the final deadline for Postmates to pay the filing fees necessary to commence Petitioners' arbitrations. Attached as Exhibit I is a true and correct copy of AAA's June 7, 2019 letter.

22. On June 10, 2019, Postmates's outside counsel sent a letter to AAA reasserting its previous objections to the form and substance of Petitioners' demands, arguing for a stay of arbitration under AAA's rules, seeking "a reasonable payment plan" for the fees it owes, and questioning AAA's fairness and neutrality. Attached as Exhibit J is a true and correct copy of AAA's June 10, 2019 letter.

23. On June 11, 2019, Keller Lenkner sent a letter to AAA responding to Postmates's June 10 letter. That letter made clear that AAA correctly applied its rules and the Fleet Agreement to Petitioners' arbitration demands, that Postmates was not entitled to a stay of arbitration under

AAA's rules, and that Petitioners met their filing requirements in all respects. Attached as Exhibit K is a true and correct copy of Keller Lenkner's June 11, 2019 letter.

24. Also on June 11, 2019, Keller Lenkner re-served each Petitioner's previously-filed demand, in hard copy, on AAA's official, individual demand form, by hand, to Postmates's headquarters. Attached as Exhibit L is a true and correct copy of one Petitioner's AAA demand form.

25. Postmates did not pay the filing fees it owed by AAA's June 13 deadline.

26. On June 17, 2019, AAA sent an email to the parties' counsel acknowledging their June 10 and June 11 letters and stating that AAA "must require that all fees be paid or the administration will be discontinued and the AAA cases will be closed." Attached as Exhibit M is a true and correct copy of AAA's June 17, 2019 email.

27. In response to AAA's email, Keller Lenkner requested that AAA "confirm that [Postmates] failed to meet the June 13 deadline." Attached as Exhibit N is a true and correct copy of Keller Lenkner's June 17, 2019 email.

28. On June 20, 2019, Postmate's outside counsel sent an email to AAA responding to AAA's June 17, 2019 email. Attached as Exhibit O is a true and correct copy of that June 20 email.

29. On June 21, 2019, AAA sent an email to the parties' counsel (1) confirming that each Petitioner's demand complied in all respects with AAA's requirements, and (2) stating that AAA "is closing [Petitioners'] cases" due to Postmates's lack of payment. The email also stated that "AAA will abide by any court order directing the manner in which the underlying arbitrations should proceed." Attached as Exhibit P is a true and correct copy of AAA's June 21, 2019 email.

30. Postmates's counsel has never suggested to me that Postmates believes its

arbitration agreements are unenforceable, nor has counsel identified a single Petitioner whom counsel believes is not subject to a valid arbitration agreement with Postmates.

31. Each Petitioner has signed an engagement letter with Keller Lenkner authorizing Keller Lenkner to represent the Petitioner in his or her dispute with Postmates. During the parties' mediation discussions, Postmates's outside counsel suggested, with no factual support, that this was not the case. In response, Keller Lenkner offered to share a sample of Petitioners' engagement letters with the mediator to allow Mr. Feliu to confirm to Postmates's outside counsel that Petitioners are in fact Keller Lenkner clients. Postmates's outside counsel declined that proposal.

32. Postmates has previously suggested, with no basis, that Keller Lenkner does not intend to litigate Petitioners' claims in individual arbitration or is incapable of doing so. That assertion is false. Keller Lenkner is committed to litigating Petitioners' claims to a successful conclusion and is prepared to invest substantial additional resources in Petitioners' cases. Already, Keller Lenkner has built the infrastructure necessary to litigate a large number of claims simultaneously. Furthermore, the firm regularly hires attorneys on a contract basis from staffing agencies that are capable of providing hundreds of additional attorneys and paralegals if necessary. And Keller Lenkner regularly enters into co-counsel relationships with other law firms. Although Keller Lenkner is under no obligation to inform Postmates of its litigation strategy, it is fully capable of pursuing, and is willing to pursue, each Petitioner's claims in individual arbitration. Our firm has devoted its resources to representing Petitioners—and will continue to do so— because it believes in the merits of their claims.

33. Attached as Exhibit Q is a true and correct copy of Postmates's Petition to Compel Arbitration in *Rimler v. Postmates Inc.*, No. CGC-18-567868 (Cal. Sup. Ct. Aug. 17, 2018).

34. Attached as Exhibit R is a true and correct copy of Postmates's Motion to Compel

Arbitration in *Winns v. Postmates Inc.*, No. CGC-17-562282 (Cal. Sup. Ct. Jan. 23, 2018).

  I affirm that the foregoing is true under penalty of perjury under the laws of the United States.

  Signed on September 27, 2019 in Chicago, Illinois

                Respectfully submitted,

                /s/ Ashley Keller
                Ashley Keller (#6300171)
                 ack@kellerlenkner.com
                Travis Lenkner (#6311545)
                 tdl@kellerlenkner.com
                Tom Kayes (#6315461)
                 tk@kellerlenkner.com
                KELLER LENKNER LLC
                150 N. Riverside Plaza, Suite 4270
                Chicago, Illinois 60606
                (312) 741-5220

                *Attorneys for Petitioners*