**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| AARON MCCLENON, et al., | ) |
| | ) |
| | ) Civil Action No. 19-cv-06415 |
| *Petitioners*, | ) |
| v. | ) Honorable Mary M. Rowland |
| | ) |
| POSTMATES INC., | ) |
| | ) |
| *Respondent*. | ) |
| | ) |

**REPLY IN SUPPORT OF PETITIONERS'**
**<u>MOTION TO COMPEL ARBITRATION</u>**

# TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................................... 1

II. ARGUMENT ............................................................................................................. 3

   A. An Arbitrator Must Resolve the Parties' Disputes. .......................................... 3

   B. Petitioners Unequivocally Do Not Seek "Class Arbitration." ........................... 4

      1. A "Class Arbitration" Is a Representative Action. ...................................... 5

      2. Petitioners' Arbitration Demands Are Individual, Not Representative. ...................... 6

   C. Postmates's Meritless Grievances are Unrelated to "Class Arbitration." ........................... 9

      1. Petitioners Submitted Detailed, Individualized Demands, the Sufficiency of Which
         Can Be Decided Only by an Arbitrator ........................................................ 9

      2. Any "Settlement Pressure" Postmates Faces Is Due to Its Own Employment Practices,
         Not "Class Arbitration." ............................................................................. 11

   D. This Court Should Compel Postmates to Comply with its Arbitration Agreement,
      Including the Requirement that the Parties Comply with AAA's Administrative
      Determinations. ....................................................................................... 13

III. CONCLUSION ........................................................................................................ 15

## TABLE OF AUTHORITIES

**CASES**                                                                         **PAGE(s)**

*Allemeir v. Zyppah, Inc.*,
2018 WL 6038340 (C.D. Cal. Sept. 21, 2018) ....................................................14

*AT&T Mobility LLC v. Bernardi*,
2011 WL 5079549 (N.D. Cal. Oct. 26, 2011).........................................................7

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011).............................................................................................5, 6

*Brown v. Keller Lenkner, LLC*,
No. 1:18-cv-12423-NMG, Dkt. No. 1 (D. Mass Nov. 20, 2018)...........................12

*Conley v. Gibson*,
355 U.S. 41 (1957)................................................................................................11

*Eubank v. Pella Corp.*,
753 F.3d 718 (7th Cir. 2014) ........................................................................1, 2, 5

*Herrington v. Waterstone Mortgage Corporation*,
907 F.3d 502 (7th Cir. 2018) ................................................................................6

*Ingle v. Circuit City Stores, Inc.*,
328 F.3d 1165 (9th Cir. 2003) ...............................................................................1

*Lamps Plus, Inc. v. Varela*,
139 S. Ct. 1407 (2019).............................................................................................5

*Lifescan, Inc. v. Premier Diabetic Servs., Inc.*,
363 F.3d 1010 (9th Cir. 2004) ..............................................................................14

*PaineWebber Inc. v. Farnam*,
843 F.2d 1050 (7th Cir. 1988) ..............................................................................13

*Rapaport v. Soffer*,
2011 WL 1827147 (D. Nev. May 12, 2011).........................................................12

*Schoenduve Corp. v. Lucent Techs., Inc.*,
442 F.3d 727 (9th Cir. 2006) ................................................................................11

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
559 U.S. 662 (2010)................................................................................................5

*Tinder v. Pinkerton Sec.*,
305 F.3d 728 (7th Cir. 2002) ................................................................................13

**CASES (cont.)**                                                            **PAGE(s)**

*Zurich Am. Ins. Co. v. Watts Indus., Inc.*,
    417 F.3d 682 (7th Cir. 2005) ................................................................3

**STATUTES**

9 U.S.C. § 4 ...............................................................................13, 15

Chicago Minimum Wage Ordinance, Chi. Mun. Code §§ 1-24-010 to 1-24-110 ........................11

**RULES**

American Arbitration Association Commercial Arbitration Rules, Rule R-1(a) .........................13

American Arbitration Association Commercial Arbitration Rules, Rule R-2 .............................13

American Arbitration Association Commercial Arbitration Rules, Rule R-56 ............................14

American Arbitration Association Commercial Arbitration Rules, Rule R-8 .............................13

**OTHER AUTHORITIES**

Class Action, BLACK'S LAW DICTIONARY (11th ed. 2019) ............................................5

Order for Postmates to Show Cause Why It Should Not Be Held In Civil
    Contempt, *Adams v. Postmates Inc.*,
    No. 4:19-cv-03042-SBA, Dkt. 258 (N.D. Cal. Dec. 3, 2019) ..............................15

Order Granting Mot. to Compel Arbitration, *Adams v. Postmates Inc.*,
    No. 4:19-cv-03042-SBA, Dkt. 253 (N.D. Cal. Oct. 22, 2019) ..................................... *passim*

Postmates's Petition for Order Compelling Arbitration, *Rimler v. Postmates, Inc.*,
    No. CGC-18-567868 (Cal. Sup. Ct. Aug. 17, 2018)..................................................1

## I.    INTRODUCTION

Postmates does not dispute that it signed an arbitration agreement—its "Fleet Agreement"—with all 200 Petitioners, Opp'n at 5 & n.2; that its "policies apply to all couriers who assent to the Fleet Agreement," *id.* at 10; and that those policies treat all couriers as independent contractors rather than employees, *id.* at 2. Absent Postmates's arbitration clause, Petitioners' misclassification claims would be appropriately resolved in a class action: Postmates committed "the same wrong" against couriers "too numerous for joinder," where each individual claim "is too small to justify the expense" of separate lawsuits in federal court. *Eubank v. Pella Corp.*, 753 F.3d 718, 719 (7th Cir. 2014).

But like so many companies, Postmates requires its workers to sign an arbitration clause that forbids class or collective actions. Although class-action waivers initially met stiff resistance, *see, e.g.*, *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1176 (9th Cir. 2003), companies like Postmates successfully argued that the speed and informality of arbitration would allow large numbers of aggrieved parties to vindicate their rights simultaneously. Arbitration, Postmates has argued, overcomes the problems class actions were meant to address and allows individualized adjudication of otherwise identical claims. *See* Postmates's Pet. Compel Arbitration at 17, *Rimler v. Postmates, Inc.*, No. CGC-18-567868 (Cal. Sup. Ct. Aug. 17, 2018), Keller Decl., Ex. Q.

The 200 Petitioners in this action took Postmates at its word. Each Petitioner filed an individual arbitration demand on a standard demand form provided by the American Arbitration Association ("AAA"); each paid an individual filing fee or submitted an individual fee waiver; and each seeks an individual proceeding seeking exclusively individual relief before an individual arbitrator. Pursuant to the Fleet Agreement, which incorporates AAA's Rules, AAA concluded that Petitioners satisfied their filing requirements. The only obstacle to individual arbitrations is

Postmates, which refuses to pay the filing fees AAA has determined it owes.

To justify its refusal, Postmates maintains that Petitioners' individual demands create so much "pressure" that they are "more akin to class and collective action litigation." Opp'n at 9. As one federal court has already held, the Fleet Agreement requires that this argument be decided in arbitration, not in court. *See* Order Granting Motion to Compel at 7 n.2, *Adams v. Postmates Inc.*, No. 4:19-cv-03042-SBA, Dkt. 253 (N.D. Cal. Oct. 22, 2019) ("*Adams*"), Second Keller Decl., Ex. A. But in all events, 200 individual demands for arbitration are not a class or collective action. The universal definition of a class action is one in which a representative plaintiff's proceeding will resolve the claims of absent parties. *Eubank*, 753 F.3d at 719. That is not the case here, and Postmates cannot muster a single precedent to the contrary.

Postmates true objection is that it never expected a large number of couriers to simultaneously pursue the arbitral remedies mandated by the Fleet Agreement. Despite repeated assurances that individual arbitration was a suitable substitute for class actions, Postmates's actual aim in implementing its class-action waiver was to <u>escape liability</u> for its widespread misclassification of workers. As Postmates has now learned, that is not going to happen. Petitioners do not doubt that Postmates finds the "pressure" created by their demands uncomfortable. Opp'n at 9. But if Postmates wanted to avoid 200 Claimants simultaneously instituting arbitration in the precise manner specified by the Fleet Agreement, the company should not have engaged in widespread wage theft. As one court has already held, the "pressure" Postmates feels is entirely of its own making. *See Adams* at 7 n.2.

Nothing in Postmates's opposition papers changes the straightforward nature of this case: The Federal Arbitration Act requires this Court to enforce the Fleet Agreement and compel arbitration because (1) Postmates concedes that Petitioners and Postmates are parties to a valid

agreement to arbitrate, (2) Postmates's arbitration agreement expressly covers the parties' dispute, and (3) Postmates has ignored AAA's administrative determinations and refused to arbitrate with Petitioners. *See Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 690 (7th Cir. 2005).

## II.     ARGUMENT

### A.     An Arbitrator Must Resolve the Parties' Disputes.

Postmates concedes that each Petitioner has entered into a valid arbitration agreement with Postmates. *See* Opp'n at 5 n.2. And Postmates admits that each Petitioner's misclassification claim is covered by the parties' arbitration agreement. *See id.* at 2, 7. Postmates merely contests the <u>manner</u> in which Petitioners have pursued arbitration, claiming that Petitioners are pursuing a forbidden "class action." But the Fleet Agreement expressly delegates that issue to an arbitrator. *See* Keller Decl., Ex. E § 11A.ii (stating that "[o]nly an arbitrator . . . shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation" of the arbitration agreement).

To avoid that conclusion, Postmates misreads the narrow carveout to its own delegation clause, which reads: "<u>as stated in Section 11B.IV below</u>, the [delegation] clause shall not apply to the Class Action Waiver and Representative Action Waiver." *Id.* From that language, Postmates attempts to argue that <u>any</u> argument about the class-action waiver—"including a dispute as to whether the Waiver is implicated by an arbitration demand—must be heard by a court and cannot be delegated to an arbitrator." Opp'n at 13. That is not so. The referenced Section 11B.IV from the carveout states that "any claim that all or part of this Class Action Waiver and/or Representative Action Waiver is <u>unenforceable, unconscionable, void, or voidable</u> shall be determined only by a court of competent jurisdiction and not by an arbitrator." Keller Decl., Ex. E § 11B.iv (emphasis added). In other words, "as stated in Section 11.IV," only questions as to the <u>validity</u> of the class waiver may be heard in court, not claims that merely require the <u>application</u> of the waiver to

specific facts.  Petitioners respect the validity of the Fleet Agreement's class waiver.  At most, each of Postmates's complaints raises questions about the interpretation of AAA rules or the meaning of a "class action" under the Fleet Agreement—all questions that must be arbitrated.  *See id.* § 11A.ii.

The Court in *Adams v. Postmates* reached the same conclusion.[1]  Rejecting the very argument Postmates makes in this Court, the *Adams* court reasoned that "[b]y prefacing the exception 'as stated in Section 10B.iv below,' the maxims of contract interpretation require the Court to construe 'any dispute' in tandem with the provisions of Section 10B.iv . . . . [and] Section 10B.iv explicitly limits the delegation clause exception to 'any claim that all or part of this Class Action Waiver and/or Representative Action Waiver is <u>unenforceable, unconscionable, void, or voidable</u>.'"  *Adams*, Dkt. 253 at 10.  That persuasive authority applies with equal force here.

**B.** **Petitioners Unequivocally Do Not Seek "Class Arbitration."**

Postmates's principal ground for opposing the Motion to Compel is that Petitioners seek "class arbitration" or "collective arbitration" barred by the Fleet Agreement.  *See* Opp'n at 1, 6–11.  Even if that matter were not delegated to an arbitrator, Postmates's argument is frivolous.  In a class or collective action, a representative plaintiff resolves the claims of absent parties.  That is obviously not what Petitioners have brought, so Postmates attempts a fundamental redefinition of class and collective proceedings.  According to Postmates: Class actions impose pressure on defendants; 200 individual arbitrations would impose "pressure on Postmates"; so Petitioners' 200 individual arbitrations are a class action.  Opp'n at 9.  To state that position is to refute it.

---

[1] The *Adams* court considered a 2019 version of the Fleet Agreement, but that version is materially identical to the 2018 Fleet Agreement that applies to Petitioners.  *See* Keller Decl. ¶ 14.

1.     A "Class Arbitration" Is a Representative Action.

Postmates argues that Petitioners seek "class or collective arbitration," Opp'n at 7, without offering any substantive definition of those terms.  That omission is no accident.  In a class or collective action, a representative seeks to resolve the claims of absent parties.  *See Eubank*, 753 F.3d at 719.  Petitioners' individual demands do not satisfy that definition.  In substance and form, each Petitioner seeks only to arbitrate his or her own dispute.  None of Postmates's distractions can alter that clear-cut conclusion.

As the Supreme Court has observed—in the very cases upon which Postmates relies, *see* Opp'n at 7–10—"[c]lasswide arbitration includes absent parties."  *Concepcion*, 563 U.S. at 347–48 (emphasis added); *see also Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 686 (2010) (noting that, in class arbitration, the arbitrator "no longer resolves a single dispute between the parties to a single agreement, but instead resolves many disputes between hundreds or perhaps even thousands of parties"); Class Action, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining a class action as a "lawsuit in which the court authorizes a single person or a small group of people to represent the interests of a larger group," and in which "a person whose interests are or may be affected does not have an opportunity to protect his or her interests by appearing personally or through a personally selected representative").

 Indeed, the Supreme Court's concern over "class arbitration" flows directly from the premise that it resolves the legal rights of absent individuals.  Class arbitration "requires procedural formality," which is inconsistent with traditional bilateral arbitration because "absent parties [will] be bound by the results of arbitration."  *Concepcion*, 563 U.S. at 349; *see also Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1416 (2019) ("Class arbitration . . . raises serious due process concerns by adjudicating the rights of absent members of the plaintiff class." (emphasis added)).  And when

many arbitration demands are "decided at once, the risk of an error will often become unacceptable" without multilayered appellate review. *Concepcion*, 563 U.S. at 350 (emphasis added). Such concerns are not present when individual claims are decided by individual arbitrators, and the cases on which Postmates relies are in accord.

The Seventh Circuit defines class and collective arbitration in the same way. That was made clear in *Herrington v. Waterstone Mortgage Corporation*, 907 F.3d 502 (7th Cir. 2018), an opinion Postmates mistakenly believes supports its position, *see* Opp'n at 10-12. In *Herrington*, the plaintiff initially brought class and collective actions in court. 907 F.3d at 503. Once compelled to arbitration, she "sought to proceed in a class arbitration [and] . . . asked the arbitrator to resolve the claims of absent class members." *Id.* at 508 (emphasis added). The Seventh Circuit further emphasized the representative nature of collective arbitration by explaining that "both class and collective arbitration" are made more complex by the need "to notify absent class members of the proceedings." *Id.* at 509.

Postmates is correct that courts prioritize "substance and function" and need not accept the "label" a party places on a claim. *See* Opp'n at 8. But it is Postmates that relies on mere labels by repeatedly calling Petitioners' demands "class arbitration" without defining the term. The record shows that in "substance and function," Petitioners' actions are individual.

> ## 2. Petitioners' Arbitration Demands Are Individual, Not Representative.

Faced with mountains of authority defining a "class action" as one resolving the claims of absent parties, even Postmates cannot bring itself to assert that any Petitioner meets that universal definition. Such an assertion would not pass the straight-face test. Petitioners' very first communication to Postmates agreed that the Fleet Agreement "requires individual arbitration" and stated that Petitioners intended to "serve individual demands for arbitration" that would result in

the empanelment of an individual arbitrator for each Petitioner. Evangelis Decl., Ex. A. Each Petitioner filed an individualized demand for arbitration on AAA's demand form. *See* Keller Decl. ¶ 24; *id.*, Ex. L. Each demand raises only one Petitioner's claims on his or her own behalf, not in any representative capacity. *See* Keller Decl., Ex. L. At all times, AAA planned to administer individual arbitrations. *See id.*, Exs. F, I.

Each Petitioner also seeks exclusively individual relief: unpaid wages, liquidated damages, statutory penalties for his or her individual injury, and an injunction requiring Postmates to properly classify <u>only</u> that individual Petitioner as an employee. *See id.*, Ex. L. Should an arbitrator rule that one Petitioner is entitled to damages, that decision would have no bearing on whether another Petitioner receives damages. Likewise, in light of the class waiver in the Fleet Agreement, any injunctive relief obtained by a Petitioner must be limited to that Petitioner alone. Lest there be any doubt, each Petitioner hereby represents that he or she seeks relief in arbitration only for himself or herself, and expressly waives any argument that a decision in one Petitioner's arbitration would affect the legal rights of any other Postmates courier.

Postmates has not identified anything in the record to suggest that any Petitioner seeks to represent any other individual on a representative basis. Postmates also cites no case in which a court determined that a set of individual arbitration demands seeking individual relief were deemed a "class" or "collective" arbitration. The cases upon which Postmates does rely are of no help. In *AT&T Mobility LLC v. Bernardi*, the court concluded that claimants sought "the same, non-individualized relief: injunction of the [AT&T]/T-Mobile merger." No. C-11-03992-CRB, 2011 WL 5079549, at *6 (N.D. Cal. Oct. 26, 2011). The *Bernardi* court expressly noted that no claimant sought "relief affecting only the individual claimants[] such as an adjustment to an individual rate plan." *Id.* at *7. Here, no Petitioner seeks <u>any</u> relief that will benefit any other Petitioner.

Because Postmates cannot show that Petitioners seek to participate in any sort of representative action, it shifts to the argument that Petitioners' demands all contain similar information. Opp'n at 8–9, n.3. But as Postmates <u>concedes</u>, its "policies apply to all couriers who assent to the Fleet Agreement." *Id.* at 10. When an employer imposes a company-wide misclassification policy, it is no surprise that its misclassified workers all allege the same facts. If 200 plaintiffs filed 200 individual complaints in court, the cases would not qualify as a class action merely because the complaints used the same words to state the parties' individual claims. The same is true in arbitration. Postmates may not invent an extra-contractual requirement of <u>sufficiently unique</u>, individualized pleading. And even if it could, the sufficiency of Petitioners' pleadings has no bearing on whether Petitioners have sought a class or collective action.

Postmates also suggests that Petitioners must be seeking a class action because AAA administered Petitioners' individual arbitrations as a group. *See* Opp'n at 9. But AAA is not a party to any contract with Postmates, and nothing in the Fleet Agreement purports to regulate how AAA deals with the task of administering numerous individual arbitrations. AAA's decision to request payment for each arbitration in a single email, or to globally reject Postmates's meritless grounds for refusing to proceed with any arbitrations, does not convert Petitioners' separate arbitrations into a class action.

Postmates further claims that "both AAA and Petitioners have conditioned the commencement of even a <u>single</u> arbitration on the commencement of <u>all</u> arbitrations and the payment of <u>all</u> fees." Opp'n at 1. Postmates cites no email, phone call, or other communication from either Petitioners or AAA in support of that claim; in fact, Postmates cites nothing at all. Nor can it, because the claim is untrue. Postmates is, and has always been, free to pay filing fees and proceed to arbitration with any Petitioner—and any Petitioner with whom Postmates elects to

proceed would welcome that development. But the fact that <u>one</u> Petitioner is proceeding to arbitration does not undermine the remaining Petitioners' right to move forward with <u>their</u> arbitrations. Each Petitioner is individually entitled to judicial relief for Postmates's refusal to do so. That Postmates appears to believe otherwise is evidence that <u>Postmates</u>, not Petitioners, seeks to treat Petitioners' demands collectively.

In a last-ditch effort to redefine class or collective actions, Postmates's notes that because "Postmates' policies apply to all couriers who assent to the Fleet Agreement," Postmates argues that "any declaratory or equitable relief declaring those terms unlawful [as to an individual Petitioner] would necessarily affect other couriers' claims." Opp'n at 10. If Postmates's argument were accepted, however, no courier could <u>ever</u> bring an individual arbitration asserting misclassification claims. Once a single individual obtained a holding that Postmates misclassified her unlawfully, the risk of non-mutual collateral estoppel would <u>always</u> "affect" other parties' claims. Thus, according to Postmates, that individual's action would become a prohibited "class action." Nonsense. Potential issue preclusion does not convert an individual lawsuit into a class or collective action; the same is true for individual arbitration.

## C. Postmates's Meritless Grievances are Unrelated to "Class Arbitration."

Postmates raises a host of distractions about how Petitioners filed their individual arbitration demands or how AAA administered them. Postmates's complaints serve only to confirm that it is Postmates, not Petitioners, that is attempting to add procedural complexity and formality to what is supposed to be an efficient, informal arbitral process.

### 1. Petitioners Submitted Detailed, Individualized Demands, the Sufficiency of Which Can Be Decided Only by an Arbitrator.

Postmates claims that Petitioners' demands were "originally filed as one grievance document submitted to AAA." Opp'n at 8. Not so. Petitioners simultaneously provided all the

individualized information necessary to commence an individual arbitration for each Petitioner, and AAA found Petitioners' method sufficient to institute their individual demands for arbitration. *See* Evangelis Decl., Ex. B (including "a list identifying each Claimant, [and] the Claimant's contact information"); Keller Decl., Ex. I ("The AAA determined Claimant has met the filing requirements under our Rules and Fee Schedule."). Because each Petitioner challenges the same misclassification policy arising from the same Postmates-wide employment practices, Petitioners' "grievance document" was merely a convenient means of listing facts that underlie each Petitioner's individual claim. *See* Evangelis Decl., Ex. C; *see also id.*, Ex. B (noting that the document "detail[s] each Claimant's claims against Postmates" (emphasis added)). Regardless, to moot Postmates's baseless objection, each Petitioner served on Postmates's headquarters, by hand delivery, an individual demand on AAA's demand form containing that Petitioner's individualized information. Keller Decl., Ex. L.

Recognizing that Petitioners have, in fact, sought individual relief, Postmates argues that each individual demand fails to "provide[] notice to Postmates of the facts or legal theories" underlying that individual's claims. Opp'n at 5. As a threshold matter, that is plainly an argument about the sufficiency of the pleadings, which must be decided by an arbitrator. *See* Keller Decl., Ex. E § 11A.ii.

Moreover—though they are not properly before this Court—Postmates's objections to the sufficiency of Petitioners' pleadings once again illustrate that it is Postmates that is attempting to add complexity and inefficiency to individual arbitration. Each demand contains the Petitioner's name, address, phone number, and email address; states that the Petitioner has worked as a Postmates courier; alleges that Postmates has misclassified the Petitioner as an independent contractor; and asserts that Postmates thereby has deprived the Petitioner of a minimum wage,

10

overtime, and other benefits to which the Petitioner is entitled as an employee.[2] *See, e.g.*, Keller Decl., Ex. L at 2. Postmates's insistence on individualized facts beyond those already provided calls for a return to fact pleading that has long since been discarded in federal court. *See Conley v. Gibson,* 355 U.S. 41, 47 (1957). There is no basis for requiring such heightened pleading standards in <u>arbitration</u>, which is intended to be more informal and efficient than litigation. *See Schoenduve Corp. v. Lucent Techs., Inc*., 442 F.3d 727, 733 (9th Cir. 2006) ("The parties agreed to arbitration . . . and must accept the loose procedural requirements along with the benefits which arbitration provides. . . . [W]e will not develop a code of pleading here." (internal quotation marks omitted)).

### 2. Any "Settlement Pressure" Postmates Faces Is Due to Its Own Employment Practices, Not "Class Arbitration."

Postmates complains that Petitioners' counsel "strategically and openly manipulated the volume and timing of their purported demands to create pressure on Postmates that is more akin to class and collective action litigation than the bilateral arbitration mandated by the Fleet Agreement." Opp'n at 9. In other words, because Petitioners' individual demands expose Postmates to high stakes in the aggregate, those individual demands must be recharacterized as "class arbitration." This argument appears targeted at Petitioners' counsel but would seemingly

---

[2] It is neither surprising nor inappropriate that a given Petitioner's demand is not limited to the specific municipal codes under which that Petitioner's claims arise. *See* Opp'n at 8–9. Petitioners' work requires them to travel through numerous municipalities. Whether the ordinances in those municipalities apply depends on how long a Petitioner works in each one. *See, e.g.*, Chicago Minimum Wage Ordinance, Chi. Mun. Code §§ 1-24-010 to 1-24-110. That information is uniquely within Postmates's control, and Postmates has refused to produce it. *See* Second Keller Decl. ¶ 7. In such a situation, it is entirely commonplace for plaintiffs in court and claimants in arbitration to list all potential causes of action.

apply to <u>any</u> scenario in which 200 couriers were represented by the same lawyers and brought their demands simultaneously.[3]

Put differently, according to Postmates, Petitioners are pursuing an impermissible class arbitration because they insist on proceeding individually rather than coordinating <u>as a group</u> to sequence their arbitrations in a fashion that Postmates deems acceptable and sufficiently economical. That through-the-looking-glass argument only confirms that it is Postmates, not Petitioners, that wishes to place Petitioners into a more manageable "class" structure, even after expressly foreclosing that very structure in the Fleet Agreement. Petitioners' refusal to proceed in that manner speaks to Postmates's refusal to arbitrate, not Petitioners'. *Cf. Rapaport v. Soffer*, No. 2:10-CV-00935-KJDRJJ, 2011 WL 1827147, at *3 (D. Nev. May 12, 2011) ("[T]he fact that the AAA arbitration rules allow the arbitrator to ask [Petitioner] whether [Petitioner] would like to pay in order to prevent termination does not create an obligation for [Petitioner] to do so, nor does it change the fact that [Respondent] owed the unpaid fees.").

As the *Adams v. Postmates* court explained, Postmates's obligation to pay individual filing fees when numerous claimants seek arbitration is not a function of any departure from Postmates's Fleet Agreement. To the contrary, it flows <u>directly from</u> Postmates's Fleet Agreement. *See Adams*, Dkt. 253 at 7 n.2 ("[T]he possibility that Postmates may now be required to submit a sizeable

---

[3] In addition to accusing Petitioners' counsel of engaging in a "shakedown" because counsel noted Postmates's costs of proceeding under the Fleet Agreement and proposed an "alternative process" to avoid those costs, Keller Decl., Ex. A, Postmates mischaracterizes prior cases in which Keller Lenkner has been involved, which have nothing to do with this case. For example, Postmates suggests that the Court should consider, for some unspecified purpose, the complaint in *Brown v. Keller Lenkner, LLC*, No. 1:18-cv-12423-NMG, Dkt. No. 1 (D. Mass Nov. 20, 2018). Many of the allegations contained in that complaint were patently false and, perhaps for that reason, counsel in that case voluntarily withdrew the complaint without ever serving it on Keller Lenkner. But more fundamentally, Postmates's attempts to smear Petitioners' counsel are legally irrelevant.

arbitration fee in response to each individual arbitration demand is a direct result of the mandatory arbitration clause and class action waiver that Postmates has imposed upon each of its couriers.").

**D.      This Court Should Compel Postmates to Comply with its Arbitration Agreement, Including the Requirement that the Parties Comply with AAA's Administrative Determinations.**

Postmates has refused to proceed with arbitration in breach of its arbitration agreement. Under the FAA, this Court should order Postmates to arbitrate "in the manner provided for in such agreement." 9 U.S.C. § 4. And such an order should be issued "promptly," *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002)*,* as arbitration "is supposed to be a speedy and inexpensive alternative to litigation," *PaineWebber Inc. v. Farnam*, 843 F.2d 1050, 1052 (7th Cir. 1988).

The parties' Fleet Agreement makes clear the "manner" in which arbitration must proceed. The agreement specifies that the AAA Commercial Arbitration Rules shall govern any arbitration between the parties. By designating the Commercial Arbitration Rules to govern disputes, Postmates and Petitioners are "deemed to have made th[o]se rules a part of their arbitration agreement." Commercial Rule 1(a).[4] The Commercial Rules also state that "[w]hen parties agree to arbitrate under [the Commercial Rules] . . . they thereby authorize the AAA to administer the arbitration." Commercial Rule 2. Once an arbitrator is appointed, "[t]he arbitrator shall interpret and apply the[] rules insofar as they relate to the arbitrator's powers and duties." Commercial Rule 8. But before an arbitrator has been appointed, or where a rule does not involve the "arbitrator's powers and duties," the rules "shall be interpreted and applied by the AAA." *Id.* And as Postmates concedes, Opp'n at 14, the Commercial Rules govern the parties' filing fee obligations: AAA is authorized to "require the parties to deposit in advance of any hearings such

---

[4] *Available at* https://www.adr.org/sites/default/files/CommercialRules_Web_FINAL_1.pdf.

sums of money <u>as it deems necessary</u> to cover the expense of the arbitration, including the arbitrator's fee." Commercial Rule 56 (emphasis added).

Accordingly, just as the court ordered in *Adams,* this Court should order Postmates to arbitrate under the Commercial Rules and raise any objections regarding "the sufficiency of Petitioners' arbitration demands and how the arbitration should be conducted" with AAA and individual arbitrators. *See Adams*, Dkt. 253 at 12. In an attempt to minimize its obligations under its arbitration agreement, Postmates notes that the court in *Adams* "den[ied] Keller Lenkner's request for an order requiring Postmates to pay AAA's fees." Opp'n at 6. But the court in *Adams* was clear that it was declining to issue such an order <u>because it would defer to AAA's determination of what fees each party owes</u>. The court noted that "[t]he Fleet Agreement specifies that the AAA Commercial Arbitration Rules shall govern any arbitration between the parties," and that the parties must therefore comply with AAA's "provisions regarding the payment of arbitration fees." *Adams*, Dkt. 253 at 12. Although Petitioners believe courts have the authority to craft an order compelling arbitration that specifically requires the payment of filing fees, *see, e.g.*, *Allemeir v. Zyppah, Inc.*, No. 18-7437-PA, 2018 WL 6038340, at *1 (C.D. Cal. Sept. 21, 2018), Petitioners have no objection to the styling of the *Adams* court's order. That approach is also consistent with a line of circuit precedent that stands for the proposition that where an arbitration agreement designates a specific organization to administer the arbitration, delegates threshold issues to the arbitrator, and expressly incorporates that organization's rules, a court should enforce the organization's determinations regarding how arbitration should proceed. *See, e.g., Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1013 (9th Cir. 2004) ("The agreement between [the petitioner] and [the respondent] is not silent because it incorporates the rules of the AAA, which do cover the apportionment of fees: They leave it up to the arbitrators.").

Under that approach, Postmates will be obligated to comply with AAA's determination regarding what fees are required to move forward with arbitration.[5] The critical point—which Postmates does not and cannot dispute—is that once this Court holds that Postmates has refused to arbitrate issues that are covered by a valid agreement to arbitrate, this Court can and should exercise its authority to require Postmates to arbitrate. *See* 9 U.S.C. § 4.

## III. CONCLUSION

For the foregoing reasons, Petitioners' motion to compel arbitration should be granted. This Court should require Postmates to comply with all AAA administrative determinations regarding the steps required to proceed with individual arbitrations, including AAA determinations regarding the amount and timing of filing fees necessary to proceed with individual arbitrations.

Dated: December 6, 2019

Respectfully submitted,

/s/ Ashley Keller
Ashley Keller (#6300171)
  ack@kellerlenkner.com
Travis Lenkner (#6311545)
  tdl@kellerlenkner.com
Tom Kayes (#6315461)
  tk@kellerlenkner.com
KELLER LENKNER LLC
150 N. Riverside Plaza, Suite 4270
Chicago, Illinois 60606
(312) 741-5220

*Attorneys for Petitioners*

---

[5] Recently, the *Adams* court ordered Postmates to show cause for why it should not be held in contempt for failing to comply with the court's order compelling arbitration. Order To Show Cause Re Contempt, *Adams v. Postmates Inc.*, No. 4:19-cv-03042-SBA, Dkt. 258 (N.D. Cal. Dec. 3, 2019), Second Keller Decl., Ex. C.

**CERTIFICATE OF SERVICE**

I certify that I caused the foregoing document to be served on all ECF-registered counsel via the Court's CM/ECF system on December 6, 2019.


Dated: December 6, 2019                          /s/ Ashley Keller _____