# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| AARON MCCLENON, et al., | ) |
| | ) |
| *Petitioners*, | ) Civil Action No. 19-cv-06415 |
| v. | ) |
| | ) Hon. Mary M. Rowland |
| POSTMATES INC., | ) |
| | ) |
| *Respondent*. | ) |

## PETITIONERS' RESPONSE TO RESPONDENT'S
## CROSS-MOTION TO COMPEL ARBITRATION

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................................. 1

II. ARGUMENT ......................................................................................................................... 4

    A. An Arbitrator Must Resolve the Parties' Disputes. ............................................................ 4

    B. Petitioners Do Not Seek "Class Arbitration." .................................................................... 6

    C. This Court Should Compel Postmates to Comply with Its Arbitration Agreement, Including the Requirement That the Parties Comply with AAA's Administrative Determinations. ................................................................................................................ 10

III. CONCLUSION .................................................................................................................... 12

# TABLE OF AUTHORITIES

**CASES**                                                                              **PAGE(s)**

*Adams v. Postmates Inc.*,
No. 4:19-cv-03042-SBA, 2019 WL 6694737 (N.D. Cal. Oct. 22, 2019) ........................ *passim*

*Allemeir v. Zyppah, Inc.*,
No. 18-7437-PA, 2018 WL 6038340 (C.D. Cal. Sept. 21, 2018)............................................12

*AT&T Mobility LLC v. Bernardi*,
2011 WL 5079549 (N.D. Cal. Oct. 26, 2011).........................................................................7

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)................................................................................................................6

*C&L Enters., Inc. v. Citizen Band Potawatomi Indian Tribe of Okla.*,
532 U.S. 411 (2001)..............................................................................................................11

*Dealer Comp. Servs., Inc. v. Old Colony Motors, Inc.*,
588 F.3d 884 (5th Cir. 2009) ................................................................................................12

*Desimoni v. TBC Corp.*,
No. 2:15-cv-366-FtM-99CM, 2017 WL 1381600 (M.D. Fla. Apr. 18, 2017)..........................7

*Herrington v. Waterstone Mortgage Corporation*,
907 F.3d 509 (7th Cir. 2018) ..................................................................................................6

*Lamps Plus, Inc. v. Varela*,
139 S. Ct. 1407 (2019)............................................................................................................6

*Lifescan, Inc. v. Premier Diabetic Servs., Inc.*,
363 F.3d 1010 (9th Cir. 2004) ........................................................................................11, 12

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
559 U.S. 662 (2010)................................................................................................................6

*Williams v. Tully*,
No. 02-cv-05687-MMC, 2005 WL 645943 (N.D. Cal. Mar. 18, 2005) ................................12

**RULES**

AAA Comm. Arb. Rule 1(a).........................................................................................................11

AAA Comm. Arb. Rule 2 .............................................................................................................11

AAA Comm. Arb. Rule 56 ...........................................................................................................11

AAA Comm. Arb. Rule 8 .............................................................................................................11

**OTHER AUTHORITIES** **PAGE(s)**

Order to Show Cause Re Contempt, *Adams v. Postmates, Inc.*
    No. 4:19-cv-03042-SBA, Dkt. No. 258 (N.D. Cal. Dec. 3, 2019)............................................10

### I. INTRODUCTION

Since May 2019, Petitioners have been trying to access the only forum where they can pursue their minimum-wage and overtime claims against Postmates: individual arbitration before the American Arbitration Association ("AAA"). As AAA conclusively determined, each Petitioner filed an individual arbitration demand that met AAA's minimum filing requirements. AAA was prepared to appoint individual arbitrators. But Postmates refused to pay its share of the filing fees, requiring Petitioners to move to compel arbitration.

Petitioners' motion to compel individual arbitrations has been fully briefed since December 6, 2019. Postmates opposes that motion on the theory that, if the Court orders Postmates to proceed with 200 individual arbitrations, Petitioners will have triggered an impermissible "class arbitration." *See generally* Postmates's Opp'n, Dkt. No. 17. Unwilling to make that frivolous argument only once, Postmates submitted it a second time as a so-called "Cross-Motion to Compel Arbitration." *See generally* Postmates's Cross-Mot., Dkt. No. 20. It did so despite this Court's statement that "I don't need cross-motions. I'm either going to order you to arbitration or I'm not." Third Decl. of Ashley Keller, Ex. D, Oct. 8, 2019 Hr'g Tr. 7:17–19. The "cross-motion" is a cut-and-paste of Postmates's opposition brief, and the only real relief both filings seek is the denial of Petitioners' motion to compel.

Petitioners' motion to compel asks this Court to order Postmates to comply with its own arbitration agreement (the "Fleet Agreement") by obeying the rules the agreement expressly incorporates: the AAA Commercial Rules. The Commercial Rules, in turn, state that AAA—not this Court—has the authority to interpret and apply the rules, require parties to submit filing fees, and determine how to administer each individual arbitration prior to the appointment of an

individual arbitrator. Postmates has refused to comply with AAA's administrative determinations, and its cross-motion asks the Court to let it escape its obligation to do so.

Postmates asks this Court to order each Petitioner to "refile their demand as an individual arbitration demand that sets forth the facts and legal theories of relief." Cross-Mot. at 15. But that request begs the question of whether Petitioners' demands <u>already</u> set forth "the facts and legal theories of relief"—and, more importantly, who decides whether Petitioners' demands were sufficient to commence individual arbitration. The answers are fatal for Postmates. AAA—the organization Postmates chose to administer its arbitrations—already determined that Petitioners' demands are sufficient to proceed to arbitration. And under the agreement Postmates drafted, any further questions about the sufficiency of the demands are expressly reserved for an arbitrator.

Another federal court has already reached that conclusion and compelled Postmates to arbitration. In *Adams v. Postmates Inc.*, No. 19-3042-SBA, 2019 WL 6694737 (N.D. Cal. Oct. 22, 2019), the U.S. District Court for the Northern District of California considered whether thousands of arbitration demands that were substantively identical to Petitioners' demands—some of them filed the same day as Petitioners' demands—sought "de facto class arbitration," and whether those demands were sufficient to trigger arbitration under the Fleet Agreement and the AAA Commercial Rules. The court held that the whether a demand comports with the Fleet Agreement "is within the arbitrator's exclusive authority." *Id.* at *7. Accordingly, the court declined to hold that the petitioners' demands sought class arbitration or otherwise violated the Fleet Agreement and AAA's rules, and it denied Postmates's request "that the [c]ourt direct [p]etitioners to refile their demands and to proceed in a specific manner." *Id.*

Moreover, since Postmates filed its cross-motion, the company has begun individually arbitrating with 50 of the *Adams* petitioners. AAA is assigning individual arbitrators to each

2

arbitration. The only material difference between those arbitrations, which proceeded, and Petitioners' arbitrations, which have stalled, is that Postmates paid the filing fees it owed to commence the former and refused to meet its obligations to commence the latter. There can be no real dispute that the sufficiency of Petitioners' demands is for AAA and individual arbitrators to decide, that AAA has found Petitioners' demands to be sufficient, and that demands for which Postmates paid its filing fees have in fact resulted in individual arbitrations. Postmates's cross-motion simply asks the Court to ignore these facts so Postmates can continue to ignore AAA's binding determinations so long as it does not like them.

Postmates also asks this Court to bar Petitioners from improperly invoking what Postmates claims are "the benefits of class or collective arbitration." According to Postmates, those benefits are "collective administration by AAA, conditioning the commencement of one arbitration on the commencement of all arbitrations and payment of all fees, or objecting to a payment plan that compensates AAA for arbitrations as they proceed and are prosecuted." Cross-Mot. at 15. But AAA, which is not a party to this action (or to the parties' contract), has unreviewable discretion to use "collective administration" in order to commence <u>individual</u> arbitrations. AAA has exclusive authority to reject Postmates's request for a "payment plan." And AAA has made clear that it will not condition the advancement of any one individual's arbitration on the fate of any other party's arbitration.

No matter how many times Postmates repackages its opposition brief, the core issue is straightforward: Petitioners have done everything AAA requires to commence individual arbitrations. The only obstacle preventing those arbitrations from commencing is Postmates's refusal to comply with AAA's administrative determinations. This Court should remove that obstacle by granting Petitioners' motion and denying Postmates's so-called "cross-motion," to the

3

extent the cross-motion seeks to stage Petitioners' arbitration demands or deviate from the rules to which the parties agreed.

## II. ARGUMENT

Postmates's "cross-motion" does not contain a single new substantive argument. Instead, it repeats, nearly verbatim, the arguments in Postmates's opposition to Petitioners' motion to compel. Postmates's opposition brief and "cross-motion" both argue that Petitioners seek "class and collective arbitration" barred by the Fleet Agreement. Cross-Mot. at 11–13; Opp'n at 7–11. Both briefs argue that this Court, rather than individual arbitrators, may decide that issue. Cross-Mot. at 9–11; Opp'n at 11–14. Both briefs argue that Petitioners' arbitration demands are substantively deficient and thus should not trigger Postmates's fee obligations. Cross-Mot. at 6–7, 14; Opp'n at 8–9, 15. And both briefs launch the same unhinged, irrelevant attacks on Petitioners' counsel. Cross-Mot. at 5–7; Opp'n at 4–6. Postmates even concedes that the briefs are duplicative, noting multiple times that an argument in its "cross-motion" is "explained" or "describe[d] in greater detail" in the opposition brief. Cross-Mot. at 9, 11.

As Postmates has already raised each of its arguments in its opposition brief, Petitioners have already addressed each argument in their reply brief. *See* Petitioners' Reply Br., Dkt. No. 23. To avoid burdening the Court, Petitioners will only briefly respond to Postmates's rehashed arguments here.

**A.    An Arbitrator Must Resolve the Parties' Disputes.**

Even as Postmates proceeds with individual arbitrations against couriers who brought demands in exactly the same manner as did Petitioners, Postmates clings to the argument that

Petitioners seek a "de facto class arbitration," Cross-Mot. at 11–14, and that the Fleet Agreement's delegation clause reserves resolution of that argument for this Court, *id.* at 9–11. Not so.

Postmates's tortured reading of the Fleet Agreement is belied by the plain text of the delegation clause. The clause reads: "<u>as stated in Section 11B.IV below</u>, the [delegation] clause shall not apply to the Class Action Waiver and Representative Action Waiver." Keller Decl., Ex. E § 11A.ii. Section 11B.IV, in turn, reads: "any claim that all or part of this Class Action Waiver and/or Representative Action Waiver is <u>unenforceable, unconscionable, void, or voidable</u> shall be determined only by a court of competent jurisdiction and not by an arbitrator." Keller Decl., Ex. E § 11B.iv (emphasis added). In other words, "as stated in Section 11B.IV," only questions as to the <u>validity</u> of the class waiver may be heard in court, not claims that merely require the <u>application</u> of the waiver to specific facts.

The validity of the class-action waiver is not at issue in this action. So Postmates is reduced to claiming that <u>any</u> argument about the class-action waiver falls outside of the delegation clause. But as a plain reading of the Fleet Agreement makes clear—and as the *Adams* court held—that claim is incorrect: "By prefacing the [delegation] exception 'as stated in Section 10B.iv below,' the maxims of contract interpretation require the Court to construe 'any dispute' in tandem with the provisions of Section 10B.iv . . . . [and] Section 10B.iv explicitly limits the delegation clause exception to 'any claim that all or part of this Class Action Waiver and/or Representative Action Waiver is <u>unenforceable, unconscionable, void, or voidable</u>.'" *Adams*, 2019 WL 6694737, at \*6.[1] Thus, "[t]he only exception to th[e] delegation [clause] is for any claim that the Class Action

---

[1] The *Adams* court considered a version of the Fleet Agreement that took effect in 2019 but is materially identical to the 2018 Fleet Agreement that applies to Petitioners. *See* Decl. of Ashley Keller ¶ 14, Dkt. No. 6-1; Second Decl. of Ashley Keller, Ex. B, Dkt. No. 23-1.

5

Waiver and/or Representative Action Waiver is 'unenforceable, unconscionable, void, or voidable.'" *Id.* Petitioners make no such claim.

**B.      Petitioners Do Not Seek "Class Arbitration."**

Even if the matter were not delegated to an arbitrator, the very cases Postmates cites contradict its argument that Petitioners seek a class proceeding. "Classwide arbitration <u>includes absent parties</u>." *AT&T Mobility LLC v. Concepcion*, 563 U.S., at *347–48 (2011) (emphasis added); *see also Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 686 (2010) (noting that, in class arbitration, the arbitrator "no longer resolves a single dispute between the parties to a single agreement, but instead resolves many disputes between hundreds or perhaps even thousands of parties"); *Herrington v. Waterstone Mortgage Corporation*, 907 F.3d 509 (7th Cir. 2018) (observing that "both class and collective arbitration" are made more complex by the need "to notify <u>absent class members</u> of the proceedings" (emphasis added)). Class arbitration "requires procedural formality," which is inconsistent with traditional bilateral arbitration because "absent parties [will] be bound by the results of arbitration." *Concepcion*, 563 U.S. at 349; *see also Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1416 (2019) ("Class arbitration . . . raises serious due process concerns by <u>adjudicating the rights of absent members</u> of the plaintiff class." (emphasis added)). And when many arbitration demands are "<u>decided at once</u>, the risk of an error will often become unacceptable" without multilayered appellate review. *Concepcion*, 563 U.S. at 350 (emphasis added). Such concerns are not present when individual claims are decided by individual arbitrators, as Petitioners seek here.

Postmates repeats four arguments for why Petitioners' demands "are, in fact, class arbitration demands." Cross-Mot. at 11. Each argument is belied by the record.

6

*First*, Postmates argues that Petitioners' demands were "originally filed as a single grievance document." *Id.* In fact, Petitioners provided AAA all the individualized information necessary for it to commence an individual arbitration for each Petitioner, the cover letter to that "grievance document" made clear that each Petitioner sought individual arbitration, *see* Decl. of Theane Evangelis, Exs. B–E, Dkt. No. 20-1, and AAA found Petitioners' method sufficient to proceed with each Petitioner's individual demand for arbitration, *see* Decl. of Ashley Keller ¶¶ 20–21, Dkt. No. 6-1; *id.*, Ex. I. And in addition to the "grievance document," each Petitioner also filed and served an individual demand for arbitration on AAA's official demand form. *See* Keller Decl. ¶ 24; *id.*, Ex. L. Each demand raises only one Petitioner's claims on his or her own behalf, not in any representative capacity. *See id.*, Ex. L. Each demand seeks exclusively individual relief: unpaid wages, liquidated damages, statutory penalties for the Petitioner's individual injury, and "appropriate equitable relief" requiring Postmates to properly classify that individual Petitioner as an employee. *See id.*; *see also* Reply Br. at 9–11.

*Second*, Postmates protests the "quantity and timing of the demands." Cross-Mot. at 12. But Postmates cites no authority suggesting that the quantity and timing of individual actions can render those actions a class proceeding. And the cases Postmates does cite are inapposite. In *AT&T Mobility LLC v. Bernardi*, the court concluded that the claimants sought "the same, <u>non-individualized</u> relief: injunction of the [AT&T]/T-Mobile merger." No. C-11-03992-CRB, 2011 WL 5079549, at *6 (N.D. Cal. Oct. 26, 2011) (emphasis added); *see also id.*, at *10 ("Granting relief in one arbitration would secure the relief sought by each of the 1,000 or more individuals seeking arbitration." (internal quotation marks and citation omitted)). And in *Desimoni v. TBC Corp.*, the claimants <u>expressly sought class arbitration</u>, which Petitioners do not seek here. No. 2:15-cv-366-FtM-99CM, 2017 WL 1381600, at *3 (M.D. Fla. Apr. 18, 2017). As another federal

7

court has already held, Postmates's obligation to pay individual filing fees when numerous claimants seek arbitration flows <u>directly from</u> Postmates's own Fleet Agreement.  *See Adams*, 2019 WL 6694737, at *4 n.2 ("[T]he possibility that Postmates may now be required to submit a sizeable arbitration fee in response to each individual arbitration demand is a direct result of the mandatory arbitration clause and class action waiver that Postmates has imposed upon each of its couriers.").  Postmates cannot now claim that the natural consequence of its Fleet Agreement's class waiver violates that very provision.  *See also* Reply Br. at 11–13.

Moreover, contrary to Postmates's unsupported assertions, neither AAA nor Petitioners "have conditioned the commencement of one arbitration on the commencement of all arbitrations." Cross-Mot. at 1 (emphases omitted).  In fact, after delaying for months, and having been repeatedly told by both Petitioners' counsel and AAA that it was free to pay fees for as many claimants as it wanted, Postmates paid the filing fees it owed for 50 claimants.  *See* Third Keller Decl. ¶ 13.  Those claimants' individual arbitrations are moving forward.  AAA is selecting an individual arbitrator for each claimant.  *See id.* ¶ 14.  And Postmates has filed an individual answer in each arbitration. *See id.* ¶ 15.  Each answer contains individual information about that claimant's employment history with the company and raises 40 affirmative defenses.  *See id.*, Ex. C.  Although Petitioners' demands contain some similar information, Postmates's own conduct makes clear that the demands are sufficiently individualized for Postmates to identify claimants, determine the nature of their claims, and respond individually to each one.  Petitioners seek nothing more than the treatment Postmates has already afforded 50 other claimants represented by Petitioners' counsel.

*Third*, Postmates complains that AAA has administered Petitioners' demands "on a classwide basis." Cross-Mot. at 12.  But AAA is not a party to any contract with Postmates, and nothing in the Fleet Agreement purports to regulate how AAA deals with the task of administering

8

numerous individual arbitrations. In addition, AAA at all times planned to administer individual arbitrations and is now doing so. *See* Keller Decl., Exs. F, I, P; Third Keller Decl. ¶¶ 11–14. AAA's decision to request payment in a single email to Postmates rather than in 200 individual invoices, or to globally reject Postmates's meritless grounds for refusing to proceed with any arbitrations, does not convert Petitioners' separate arbitrations into a "class action." *See also* Reply Br. at 8–9.

*Fourth*, Postmates objects that Petitioners seek "collective" relief in this proceeding. But Petitioners' action for relief under the Federal Arbitration Act is independent of their underlying arbitration demands to address Postmates's wage-and-hour violations. The means by which Petitioners pursue their petition to compel arbitration are irrelevant to whether the underlying demands seek collective treatment. Moreover, each Petitioner has appeared individually on the docket for this action, and each Petitioner seeks an order compelling Postmates to honor the Fleet Agreement and pay its share of that Petitioner's individual filing fees. There is nothing "collective" about such an order.

Another federal court has already refused to credit Postmates's arguments. The *Adams* court considered a motion to compel filed by 5,257 California Postmates couriers represented by Petitioners' counsel, who filed arbitration demands substantively identical to Petitioners' demands, some of them on the same date as Petitioners. *See Adams*, 2019 WL 6694737, at *2–3; Third Keller Decl. ¶¶ 4–8; *id.*, Ex. A. As here, Postmates opposed the petitioners' motion and filed a "cross-motion," arguing that the petitioners sought "de facto class arbitration," that the petitioners' demands failed to meet the requirements of the Fleet Agreement and AAA's rules, and that the court was empowered to make that determination. *See Adams*, 2019 6694737, at *3–4. The court refused to engage with Postmates's arguments. It held that "the plain language and structure of

9

the exception to the [Fleet Agreement's] delegation clause" dictate that an arbitrator, not a court, must decide whether a demand seeks class arbitration. *Adams*, 2019 6694737, at *6. The court also held that the question of whether a demand comports with the Fleet Agreement "is within the arbitrator's exclusive authority." *Id.* at 7. Accordingly, the Court declined to hold that the petitioners' demands sought class arbitration or otherwise violated the Fleet Agreement and AAA's rules, and it denied Postmates's request "that the [c]ourt direct [p]etitioners to refile their demands and to proceed in a specific manner." *Id.*[2]

No matter how many times Postmates invokes the words "class action" and "class arbitration," it cannot overcome what the record makes clear: Each Petitioner filed an individual arbitration demand on AAA's standard demand form; each paid an individual filing fee or submitted an individual fee waiver; each seeks an individual proceeding before an individual arbitrator; Postmates is already engaged in individual arbitrations with couriers who sought individual arbitration in a substantively identical manner; yet Postmates has refused to arbitrate with Petitioners. Under the Federal Arbitration Act, that is the end of the matter, and this Court should compel Postmates to arbitrate with each Petitioner in accordance with the Fleet Agreement.

**C.    This Court Should Compel Postmates to Comply with Its Arbitration Agreement, Including the Requirement That the Parties Comply with AAA's Administrative Determinations.**

Postmates's attempts at distraction and delay aside, Petitioners and Postmates ask for the same relief: that this Court direct them to arbitrate "in a manner to which the parties agreed,"

---

[2] After the *Adams* court compelled arbitration, Postmates paid the fees necessary to proceed with 50 couriers' arbitrations, but no more. The *Adams* court has issued an order to show cause why Postmates should not be held in civil contempt for its failure to abide by the order with respect to all of the petitioners in that case. *See* Order to Show Cause Re Contempt, *Adams* (N.D. Cal. Dec. 3, 2019), ECF No. 258, Second Keller Decl., Ex. C. That order has been fully briefed and is awaiting the *Adams* court's decision.

Cross-Mot. at 14. The parties' Fleet Agreement dictates that "manner" by invoking the AAA Commercial Arbitration Rules and AAA's administrative determinations.

By designating the Commercial Rules to govern arbitration, Postmates and Petitioners are "deemed to have made th[o]se rules a part of their arbitration agreement." Commercial Rule 1(a).[3] The Commercial Rules state that "[w]hen parties agree to arbitrate under [the Commercial Rules] . . . they thereby authorize the AAA to administer the arbitration." Commercial Rule 2. Once an arbitrator is appointed, "[t]he arbitrator shall interpret and apply the[] rules insofar as they relate to the arbitrator's powers and duties." Commercial Rule 8. But before an arbitrator has been appointed, or where a rule does not involve the "arbitrator's powers and duties," the rules "shall be interpreted and applied by the AAA." *Id.* Finally, AAA is authorized to "require the parties to deposit in advance of any hearings such sums of money <u>as it deems necessary</u> to cover the expense of the arbitration, including the arbitrator's fee." Commercial Rule 56 (emphasis added).

Where an arbitration agreement expressly incorporates a set of rules to govern arbitration, those rules are not optional, to be cast aside when inconvenient. They are binding. *See C&L Enters., Inc. v. Citizen Band Potawatomi Indian Tribe of Okla.,* 532 U.S. 411, 419 n.1 (2001) (when specified by contract, AAA Rules "are not secondary interpretive aides that supplement [the] reading of the contract; they are prescriptions incorporated by the express terms of the agreement itself"). Likewise, where an arbitration agreement designates a specific organization to administer arbitration, the parties must abide by the organization's determinations regarding how arbitration should proceed, and a court may order the parties to do so. *See, e.g., Lifescan, Inc. v.*

---

[3] *Available at* https://www.adr.org/sites/default/files/CommercialRules_Web_FINAL_2.pdf.

11

*Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1013 (9th Cir. 2004) ("The agreement between [the petitioner] and [the respondent] is not silent because it incorporates the rules of the AAA, which do cover the apportionment of fees: They leave it up to the arbitrators."); *Dealer Comp. Servs., Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884, 887 (5th Cir. 2009) (conclusively deferring to AAA's determination to require fees from party); *Williams v. Tully*, No. 02-cv-05687-MMC, 2005 WL 645943, at *7 (N.D. Cal. Mar. 18, 2005) ("[T]he AAA . . . ha[s] the authority, under the AAA Rules, to require [parties] to pay certain of the estimated arbitration fees in advance, and to terminate the arbitration when [they] fail[] to do so."); *see also Allemeir v. Zyppah, Inc.*, No. 18-7437-PA, 2018 WL 6038340, at *1 (C.D. Cal. Sept. 21, 2018) (ordering the respondent to "pay any fees that the AAA allocates to it and to comply with any other requirements that the AAA imposes"). Petitioners' ask for nothing more than that this Court order the parties to arbitrate in accordance with AAA's administrative determinations, including its determination of how much each party owes in filing fees and when those filing fees must be paid.

### III. CONCLUSION

For the foregoing reasons, Postmates's "Cross-Motion to Compel Arbitration" should be granted, insofar as it asks this Court to order the parties to arbitrate according to the Fleet Agreement's terms. This Court should deny Postmates's cross-motion in all other respects.

|  |  |
|---|---|
| Dated: February 4, 2020 | Respectfully submitted,<br><br>/s/ Ashley Keller<br>Ashley Keller (#6300171)<br>  ack@kellerlenkner.com<br>Travis Lenkner (#6311545)<br>  tdl@kellerlenkner.com<br>Tom Kayes (#6315461)<br>  tk@kellerlenkner.com<br>KELLER LENKNER LLC<br>150 N. Riverside Plaza, Suite 4270<br>Chicago, Illinois 60606<br>(312) 741-5220<br><br>*Attorneys for Petitioners* |

13

## **CERTIFICATE OF SERVICE**

I certify that I caused the foregoing document to be served on all ECF-registered counsel via the Court's CM/ECF system on February 4, 2020.

Dated: February 4, 2020  /s/ Ashley Keller