# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **AARON MCCLENON, et al.,** | |
| Petitioners, | |
| v. | Case No. 19-cv-06415 |
| **POSTMATES INC.,** | Judge Mary M. Rowland |
| Respondent. | |

## MEMORANDUM OPINION AND ORDER

Petitioner couriers Aaron McClenon, et al. and Respondent Postmates, Inc., bring cross motions to compel arbitration and stay the litigation pending the outcome of arbitration [4] [18 & 20] under 9 U.S.C. § 4. For the following reasons, the parties' motions are granted in part and denied in part.

## BACKGROUND

Petitioners are 200 Illinois couriers who work for Respondent Postmates Inc., an online food delivery platform. (Dkt. 6 at 1; 3). To work for Postmates, each courier must sign a "Fleet Agreement," which classifies them as independent contractors, not employees. (*Id.* at Appendix E § 7A).[1]

The Fleet Agreement

The Fleet Agreement contains a Mutual Arbitration Provision stating that the parties "agree to resolve any disputes between them exclusively through final and

---

[1] Postmates updated its Fleet Agreement on April 3, 2019. Petitioners, however, stopped working for Postmates prior to that date. Petitioners are thus subject to and pursued arbitration under Postmates' 2018 Fleet Agreement which will be discussed herein. (Dkt. 6 at Keller Decl. ¶ 14).

1

binding arbitration instead of filing a lawsuit in court." (*Id.* at § 11A). The Provision contains an express Class Action Waiver and Representative Action Waiver, which provides that "any and all disputes or claims between the parties will be resolved in individual arbitration" and that the parties "waive their right to have any dispute or claim brought, heard or arbitrated as a class and/or collective action" or "representative action." (*Id.* at §§ 11Bii-iii).

The arbitration requirement applies to "any and all claims between the Parties, including but not limited to those arising out of or relating to this Agreement, the Contractor's [courier's] classification as an independent contractor, … and all other aspects of the Contractor's relationship with Postmates…." (*Id.* at § 11Ai). Pursuant to a delegation clause, the parties must also use arbitration for disputes regarding the Mutual Arbitration Provision itself (with a specified caveat):

> Only an arbitrator, and not any federal, state, or local court or agency, shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Mutual Arbitration Provision. However, as stated in Section 11B.IV below, the preceding clause shall not apply to the Class Action Waiver and Representative Action Waiver.

(*Id.* at § 11Aii). Section 11Biv states:

> Notwithstanding any other clause contained in this Agreement, this Mutual Arbitration Provision, or the American Arbitration Association Commercial Arbitration Rules ("AAA Rules"), any claim that all or part of this Class Action Waiver and/or Representative Action Waiver is unenforceable, unconscionable, void, or voidable shall be determined only by a court of competent jurisdiction and not by an arbitrator. As stated above, *all other disputes* regarding interpretation, applicability, enforceability, or formation of this Mutual Arbitration Provision shall be determined exclusively by an arbitrator.

(*Id.*) (emphasis added).

2

To initiate arbitration, a courier must file a demand stating "(1) the name and address of the party seeking arbitration, (2) a statement of the legal and factual basis of the claim, and (3) a description of the remedy sought." (*Id.* at § 11Bi). Arbitration is administered by the American Arbitration Association ("AAA") under its Commercial Arbitration Rules and "Postmates shall pay the arbitrator's and arbitration fees and costs, unless applicable law requires otherwise." (*Id.* at §§ 11Biv; 11Bvi).

Petitioners' Arbitration Demands

On March 6, 2019, Petitioners' counsel informed Postmates that it represents more than 3,000 Postmates couriers in California and Illinois who claim Postmates has misclassified them as independent contractors. (*Id.* at Appendix A). Counsel represented that the couriers planned to "proceed with every arbitration simultaneously" which would "obligate Postmates to pay AAA more than $20 million—" a number that "will continue to grow, as roughly 500 additional drivers engage our firm each week." (*Id.*) Given this expense, counsel offered to discuss alternative processes for resolving the claims. (*Id.*) Despite attempts to resolve the matter in the following months, the parties were unable to come to a mutually agreeable solution. (Dkt. 6 at 5).

On April 22, 2019, Petitioners' counsel filed an arbitration demand with AAA on behalf of 4,925 California Postmates couriers and on May 13, 2019, filed a demand on behalf of additional claimants, including the 200 Illinois Petitioners here. (Dkt. 17 at Exhibits B-E). Both demands were filed as a single document reciting the

3

claimants' grievances and an attached spreadsheet listing the individual claimants. (*Id.* at Evangelis Decl. ¶¶ 4-5). AAA determined that it would administer the arbitrations and assessed filing fees payable by Postmates under the Fleet Agreement. (Dkt. 6 at Keller Decl. ¶ 17).

On May 31, 2019, AAA contacted Postmates regarding its position on the assessed fees and arbitration demands. (*Id.* at ¶ 18). Postmates responded that in its view no arbitration proceedings had begun because the couriers' arbitration demands were improper under the Fleet Agreement. (*Id.* at Exhibit G). For example, Postmates argued that the demands had been filed as "one, mass arbitration demand" which "circumvents the Fleet Agreement's express requirement that all arbitrations must take place on an *individualized* basis." (*Id.*).

On June 7, 2019, AAA informed the parties that the couriers' demands were proper under AAA's rules and that if Postmates had an issue regarding the substance or manner of the demands, it could raise that issue with the appointed arbitrator. (*Id.* at Exhibit I). AAA further stated that it would decline to administer the couriers' claims unless Postmates paid $11,022,400 in administrative filing fees by June 13, 2019. (*Id.*)

On June 10, Postmates reiterated its objection that the couriers "exploited AAA's rules by filling a collective demand" and requested that AAA allow Postmates to pay arbitration fees as cases are administered, rather than for all cases at once. (*Id.* at Exhibit J). In response, Petitioners' counsel re-filed individual demands for each courier using AAA's individual demand form. (*Id.* at Keller Decl. ¶ 24).

4

Postmates maintained that the demands, although served individually, were still deficient because they "continued to assert generic claims that were copied and pasted thousands of times" and did not recite the amount in controversy asserted by each courier. (Dkt. 17 at Evangelis Decl. ¶ 12). Postmates declined to pay AAA's filing fees by June 13, 2019. (Dkt. 6 at Keller Decl. ¶ 25).

On June 17, 2019, AAA informed the parties that the couriers' demands were sufficient to trigger arbitration, but that it would decline to administer the cases unless all fees were paid. (*Id.* at Exhibit M). AAA suggested that Postmates could pay an initial fee of $300.00 per claimant while the parties further considered mediation or other options. (*Id.*) As neither party agreed to that solution, AAA closed the cases. (*Id.* at Exhibit P).

Petitioners Seek Court Intervention

On June 3, 2019, Petitioners' filed a petition to compel arbitration in the Northern District of California on behalf of the California couriers. The California couriers moved to compel arbitration and for an order that Postmates pay arbitration filing fees. Postmates filed a cross-motion to compel arbitration requesting that petitioners refile their demands as individual arbitration demands and proceed to arbitration on an individual basis. The court granted the motions, but only insofar as they sought an order compelling arbitration. *Adams v. Postmates Inc.*, 414 F. Supp.

3d 1246 (N.D. Cal. 2019). The court denied petitioners' request for fees and Postmates' request that petitioners refile their demands. [2] *Id.*

On September 26, 2019 Petitioners, Illinois couriers, filed a Petition to Compel Arbitration with this Court. As in the California proceedings, the parties each moved to compel arbitration in accordance with the Fleet Agreement.

## **LEGAL STANDARDS**

Under the Federal Arbitration Act ("FAA"), "[a] written provision in … a contract… to settle by arbitration a controversy thereafter arising out of such contract … shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. The Act "mandates that district courts *shall* direct parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). It reflects a "'liberal federal policy favoring arbitration agreements,'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)), and places "'arbitration agreements on an equal footing with other contracts.'" *Gore v. Alltel Comm'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012) (quoting *Concepcion*, 563 U.S. at 339). "When deciding whether parties agreed to arbitrate a certain matter, courts generally should apply ordinary state-law principles that govern the formation of contracts." *Druco Rest., Inc. v. Steak N Shake Enterp., Inc.*, 765 F.3d 776, 781 (7th Cir. 2014).

---

[2] That order has been appealed by Postmates. *Postmates v. Adams,* No. 19-17362 (9th Cir. 2020). Postmates' motion to stay while the appeal was pending was denied by the district court. *Adams v. Postmates, Inc.*, No. 19-3042 SBA, 2020 WL 1066980 (N.D. Cal. Mar. 5, 2020).

6

Under the FAA, a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court … for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Courts deciding motions to compel arbitration apply a summary judgment standard in accordance with Federal Rule of Civil Procedure 56(c). *Tickanen v. Harris & Harris, Ltd.*, 461 F.Supp.2d 863, 866 (E.D. Wis. 2006); *Meyer v. Uber Technologies, Inc.*, 868 F.3d 66, 74 (S.D.N.Y. 2017). Movants are required to "provide sufficient evidence in support of their claims such that a reasonable jury could return a verdict for them under applicable law." *Friends for Health: Supporting North Shore Health Center v. PayPal, Inc.*, No. 17 C 1542, 2018 WL 2933608, at *3 (N.D. Ill. June 12, 2018) (internal quotations omitted). The Court may consider exhibits and affidavits regarding the arbitration agreement. *Id.*

## ANALYSIS

The parties agree that the Mandatory Arbitration Provision is valid and that Petitioner's misclassification claims must be resolved through arbitration. Consequently, Petitioners argue that the Court should compel Postmates to pay the filing fees necessary to commence arbitrations with the AAA and all future arbitration fees, as required by the Fleet Agreement. (Dkt. 6 at Exhibit E § 11Bvi). Postmates counters that no fees are due because Petitioners' demands are inadequate under the Fleet Agreement which requires that arbitration proceed on an individual basis. According to Postmates, Petitioners are attempting to proceed with arbitration

7

on a de facto class-wide basis in violation of the Class Action and Representative Action Waivers. Hence, Postmates seeks an order compelling Petitioners to refile their demands and proceed with arbitration on an individual basis.

Postmates' Request for Individual Arbitration

Postmates asks the Court to enter an order "(1) requiring each Petitioner to refile their demand as an individual arbitration demand that sets forth the facts and legal theories of relief, and the amount in controversy, applicable to the particular Petitioner; and (2) requiring each Petitioner to proceed to arbitration on an individual basis—*i.e.*, without improperly invoking the benefits of class or collective arbitration, such as collective administration by the AAA, conditioning the commencement of one arbitration on the commencement of all arbitrations and payment of all fees, or objecting to a payment plan that compensates AAA for arbitrations as they proceed and are prosecuted." (Dkt. 20 at 2).

As a threshold matter, the Court must determine whether it—or an arbitrator— has the authority to determine whether Petitioners' demands contravene the Fleet Agreement's requirement of individual arbitration. The Mutual Arbitration Provision contains a delegation clause which confers to the arbitrator the "exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of the[e] Mutual Arbitration Provision." (Dkt. 6 at Exhibit E § 11Aii).[3] Under this clause alone, the authority to interpret the Class Action and

---

[3] Postmates argues that the issue of whether Petitioners seek class or collective arbitration cannot be delegated to an arbitrator; it must be decided by a court. (Dkt. 17 at 11). It is well-settled that, although courts generally resolve questions of arbitrability, the parties may delegate to an arbitrator whether an issue is subject to arbitration so long as they do so "clear[ly] and unmistakabl[y]." *Henry Schein,*

8

Representative Action Waivers and determine whether Petitioners' demands violate these provisions would fall to the arbitrator, not the Court.

The delegation clause does contain a limited exception related to the Class Action and Representative Action Waivers: "[A]s stated in Section 11B.IV below, the preceding clause shall not apply to the Class Action Waiver and Representative Action Waiver." (*Id.*) Section 11Biv, in turn, states that "any claim that all or part of this Class Action Waiver and/or Representative Action Waiver is unenforceable, unconscionable, void, or voidable shall be determined only by a court of competent jurisdiction and not by an arbitrator."

The parties disagree about the scope of the exception to the delegation clause. Petitioners maintain that the exception is limited to challenges that the Class Action or Representative Action Waiver is unenforceable, unconscionable, void, or voidable. Because the parties agree that the provisions are enforceable and valid, Petitioners argue that Postmates must raise their objections about Petitioners' arbitration demands to an arbitrator and not the Court. Postmates contends that § 11Aii exempts *all* issues regarding the Class Action and Representative Action Waivers from the delegation clause, and that § 11Biv merely lists examples of the types of exempted

---

*Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944-45 (1995)). This includes issues regarding whether the parties seek class or collective arbitration. *See Herrington v. Waterstone Mortg. Corp.*, 907 F.3d 502, 507 fn. 3; 511 (7th Cir. 2018). A delegation clause is one way "parties can agree to arbitrate gateway questions of arbitrability, such as whether the parties have agreed to arbitrate [a particular issue] or whether their agreement covers a particular controversy." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 66; 68-69; 72 (2010) (enforcing delegation clause similar to that in Fleet Agreement providing that "[t]he Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable."). Postmates, the drafter of this agreement, does not challenge the validity of the delegation clause at issue here.

9

challenges to those provisions. Thus, it argues that the Court must consider whether Petitioners' demands violate the Class Action and/or Representative Action Waiver.

A federal court must "apply[] general state-law principals of contract interpretation to the interpretation of an arbitration agreement". *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 475 (1989). Under Illinois law, "[a] contract is to be construed as a whole" and "meaning and effect must be given to every part of the contract including all its terms and provisions, so no part is rendered meaningless or surplusage unless absolutely necessary." *Coles-Moultrie Elec. Co-op. v. City of Sullivan*, 709 N.E.2d 249, 253 (Ill. App. Ct. 1999). Unambiguous terms must be enforced according to their plain language, *Regency Commercial Assocs., LLC v. Lopax, Inc.*, 869 N.E.2d 310, 316 (Ill. App. Ct. 2007), but where there is silence or ambiguity as to *who* should decide an issue, federal courts must apply a presumption against arbitration. *First Options*, 514 U.S. at 944-45 ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so.") (internal quotations omitted).

The parties primarily base their respective interpretations of the delegation clause on the plain language of §§ 11Aii and 11Biv. Nevertheless, the Court begins by briefly addressing Postmates' argument that "Petitioners' interpretation *at best* highlights an ambiguity in the reach of the delegation clause's carve-out" and therefore, the Court should apply the *First Options* presumption against arbitration. (Dkt. 33 at 6). "An ambiguity does not exist simply because the parties disagree as to the meaning of a contractual provision[,] [r]ather an ambiguity exists when the

10

contractual provision contains language that is susceptible to more than one reasonable interpretation." *Ringgold Capital IV, LLC v. Finley*, 993 N.E.2d 541, 547 (Ill. App. Ct. 2013). This is a determination courts must make independently of the parties' contentions. *Id*. The Court does not believe §§ 11Aii or 11Biv are ambiguous; the Fleet Agreement "clearl[y] and unmistakabl[y]" confers to the arbitrator the authority to resolve issues concerning any dispute regarding the Mutual Arbitration Provision with one exception: a challenge to the Class Action waiver as unenforceable, unconscionable, void, or voidable. *First Options*, 514 at 944-45. This is consistent with the approach of other federal courts in this district when interpreting similar language in delegation clauses. *See e.g., Lee v. Uber Techs., Inc.*, 208 F. Supp. 3d 886, 891 (N.D. Ill. 2016) (delegation clause providing that "'disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision[ ] ... shall be decided by an Arbitrator and not by a court or judge'" met the "clear and unmistakable" standard); *Kemph v. Reddam*, No. 13 CV 6785, 2015 WL 1510797, at *4 (N.D. Ill. Mar. 27, 2015) (reaching same conclusion regarding delegation clause providing that "'any dispute ... under this loan agreement will be resolved by binding arbitration" and "defin[ing] 'dispute' as 'including any issue concerning the validity, enforceability, or scope of this loan or the Arbitration agreement.'") [4]

---

[4] The Mutual Arbitration Provision's express incorporation of the AAA Rules is further evidence that the parties clearly and unmistakably delegated arbitrability issues to an arbitrator. (*See* Dkt. 6 at Exhibit E § 11Bvi). *Vergara v. Nintendo of Am. Inc.*, No. 19 C 6374, 2020 WL 2571903, at *3 (N.D. Ill.

In light of the plain language of the delegation clause, the Court concludes that its exception is limited to challenges to the enforceability of the Class Action and Representative Action Waivers. The relevant language reads, "*[A]s stated in Section 11BIV below*, the preceding clause [conferring the arbitrator with the authority to determine arbitrability] shall not apply to the Class Action Waiver and Representative Action Waiver." (Dkt. 6 at Exhibit E § 11Aii) (emphasis added). In the Court's view, the language is unambiguous that the prefacing phrase—"as stated in Section 11BIV"— limits the reach of the broader phrase that follows—"shall not apply"— to what is stated in § 11Biv: claims that the Class Action and/or Representative Action Waivers are "unenforceable, unconscionable, void, or voidable." (*Id.*)

When considering the California couriers' motion to compel, the *Adams* court adopted the same interpretation of nearly identical language albeit a different version of the Fleet Agreement. *Adams*, 414 F. Supp. 3d at 1253-54. There the delegation clause exception read: "However, as stated in Section 10Biv below, the preceding clause shall not apply to any dispute relating to or arising out of the Class Action Waiver and Representative Action Waiver…." *Id.* at 1252. Section 10Biv was identical to Section 11Biv in the present version of the Fleet Agreement. *Id.* Rejecting the same proposed interpretation of these terms as Postmates currently advances, the Court concluded:

> [T]he exception to the delegation clause is limited specifically to challenges to the *enforceability* of the Class Action and Representative Action

---

May 21, 2020) (collecting cases) ("[A]n arbitration agreement's incorporation of the AAA rules qualifies as a 'clear and unmistakable' agreement to arbitrate arbitrability.").

12

> Waivers—and not more generally to "any dispute" concerning the waivers, as Postmates contends. ... By prefacing the exception with "as stated in Section 10Biv below," the maxims of contract interpretation require the Court to construe "any dispute" in tandem with the provisions of Section 10Biv.

*Id.* at 1253-54 (emphasis in original).

Postmates argues that "the *only* way to read the two clauses that does not nullify one of the provisions or render it meaningless" is that "the specific enumerated claims in Section 11Biv *illustrate*," rather than restrict, "the types of claims that fall within the general carve-out in Section 11Aii." (Dkt 33 at 6) (emphasis in original) (internal quotations and citations omitted). But this interpretation itself renders the more specific exception in Section 11Biv superfluous, as challenges to the enforceability of the Class Action and/or Representative Action Waivers would always be encompassed in the broader prohibition that the delegation clause "shall not apply to the Class Action Waiver and Representative Action Waiver." (*Id.* at Exhibit E § 11Aii); *see also Adams*, 414 F. Supp. 3d at 1254 ("Construing the 'any dispute' language as a separate exception would impermissibly render the more specific provisions in Section 10Biv superfluous, since 'any dispute' would always include a claim that the Waivers are unenforceable.").

Moreover, Postmates asks the Court to ignore the plain meaning of the phrase "as stated" and ascribe it a meaning akin to "as illustrated by" or "including but not limited to". (Dkt. 20 at 10; Dkt. 33 at 6). The Court, however, must "presume[ ] the provisions [in a contract] are purposefully inserted and th[at] language is not employed idly." *Coles-Moultrie Elec. Co-op.*, 709 N.E.2d at 253. Several provisions in the Fleet Agreement, such as § 11Ai, use the phrase "including but not limited to,"

13

suggesting that if the parties truly meant to ascribe that meaning to the phrase "as stated" they would have done so explicitly. (*See* Dkt. 6 at Exhibit E §§ 1C, 2A, 2B, 3C, 6A, 6B, 7B, 8A, 10A, 10B, 10C, 11Ai, and 12Bviii). The Court's interpretation upholds the plain meaning of §§11Aii and 11Biv and reads them together to avoid rendering either provision superfluous.

In sum, the Court concludes that the Fleet Agreement delegates to the arbitrator the exclusive authority to resolve Postmates' claims that Petitioners' arbitration demands violate the Class Action and Representative Action Waivers by seeking *de facto* class arbitration. As such, the Court declines to consider the merits of the parties' arguments on that issue and leaves them for an arbitrator to resolve.[5] Postmates' requests that the Court order Petitioners to refile their demands and proceed with arbitration without resorting to certain collective arbitration tactics are denied.

Petitioners' Request for Fees

The Court also declines to grant the Petitioners' request that the Court order Postmates to "(1) pay all arbitration filing fees and arbitration retainers necessary to proceed with Petitioners' demands for arbitration within 14 days of the fees being invoiced by AAA, and (2) pay any subsequent invoices related to Petitioners'

---

[5] Postmates alerts the Court of its concern that "unless the Court addresses this issue, Postmates may be left with no forum in which to advance its argument" because in the ongoing *Adams* proceedings in California, the "AAA refused to appoint an arbitrator to answer that question [regarding whether Petitioners seek de facto class arbitration] upon Postmates' request." (Dkt. 33 at fn. 2). While the Court is frustrated for the hundreds of couriers and for Postmates that they have been unable to have the merits of the claims heard and resolved while the lawyers have engaged in the procedural gymnastics, the law on arbitration agreements and the language of the Fleet Agreement, drafted by Postmates, ties the Court's hands.

14

arbitrations within 14 days of receiving those invoices." (Dkt. 6 at 12). As the *Adams* court observed, when an arbitration agreement, such as the Fleet Agreement at issue, incorporates the AAA's Rules, "the payment of arbitration fees, including related expenses, is a procedural condition precedent to be decided by the arbitrator," not the Court. No. 3:19-cv-03042-SBA, Dkt. 253 at 13 (citing *Dealer Computer Servs., Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884, 887 (5th Cir. 2009)); *see also Lumbermens Mut. Cas. Co. v. Broadspire Mgmt. Servs., Inc.*, 623 F.3d 476, 482 (7th Cir. 2010) (citing *Dealer* approvingly). Further, ordering the payment of all fees up front would be premature, as Postmates challenges this as a collective arbitration tactic. The Court must give the arbitrator a chance to determine whether conditioning the start of any one arbitration on the payment of fees for all related arbitration demands contravenes the Fleet Agreement.

## CONCLUSION

For the foregoing reasons, Petitioners' Motion to Compel Arbitration and Postmates' Cross-Motion to Compel Arbitration and Stay Proceedings are granted in part and denied in part. The Court grants the motions insofar as they seek an order compelling arbitration in accordance with the Mandatory Arbitration Provision. Under §4 of the FAA and the Fleet Agreement, the parties are obligated to arbitrate Petitioners' misclassification claims and are hereby ordered to do so. The Court also concludes that the parties must arbitrate any dispute that Petitioners' demands do not comply with the Fleet Agreement. The Court denies the parties request for all other forms of relief.

Accordingly, the Court stays this action "until arbitration has been had in accordance with the terms of the [applicable Fleet Agreement]." 9 U.S.C. § 3. The Clerk shall administratively close this action. Petitioners shall serve a copy of this Order on the arbitrator.

E N T E R:

Dated: July 20, 2020

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge